**HOUFF TRANSFER, Inc. v. UNITED STATES et al.**

**Civ. A. No. 313.**

United States District Court
W. D. Virginia, at Harrisonburg.

Heard May 28, 1952.

Decided July 15, 1952.

852

Charles A. Nelson, of Harrisonburg, Va., and Glenn F. Morgan, of Washington, D. C., for plaintiff.

Frank V. Vesper, Sp. Asst. to the Atty. Gen., for the United States.

Isaac K. Hay, Atlanta, Ga., for the Interstate Commerce Commission (H. G. Morison, Asst. Atty. Gen., James E. Kilday, Sp. Asst. to the Atty. Gen., Howard C. Gilmer, Jr., U. S. Atty., Roanoke, Va., and Edward M. Reidy, Chief Counsel, Washington, D. C., Interstate Commerce Commission, on the brief).

Before DOBIE, Circuit Judge, PAUL, Chief Judge, and BARKSDALE, District Judge.

### BARKSDALE, District Judge.

Houff Transfer, Inc., of Weyers Cave, Virginia, a Virginia corporation (hereinafter referred to as "Houff"), as plaintiff, instituted this action under the applicable statutes, seeking to vacate and set aside orders of the Interstate Commerce Commission entered in a proceeding under Section 5(2) of the Interstate Commerce Act, 49 U.S.C.A. § 5(2), wherein the Commission denied plaintiff's application to purchase certain operating rights from a partnership doing business as Wesley Stillwell (hereinafter called "Stillwell"), of Media, Pennsylvania, and the subsequent action of the Commission in refusing to reconsider its disapproval of its application.

Houff and Stillwell, on May 19, 1949, filed an application with the Commission under Section 5(2) of the Act for approval of the purchase by the former of a portion of the operating rights of the latter for the transportation of general commodities, with exceptions, over irregular routes between Aston and Middletown Townships, Pennsylvania, on the one hand, and points in New Jersey and New York, on the other hand. A competing carrier, Smith's Transfer Corporation, of Staunton, Va., opposed the application. The Commission's examiner recommended that the application be approved, but the Commission, acting through Division 4, in its report and order of June 1, 1950, denied the application on the ground that the acquisition of these operating rights by Houff would not be consistent with the public interest, as required by Section 5(2) of the Act. Houff and Stillwell filed petitions for reopening, reconsideration and reversal of the order, but the Commission, by order of April 2, 1951, denied the petitions. Whereupon,

Houff brought this action to set aside the Commission's order of June 1, 1950.

As found by the Commission, plaintiff, Houff, operates in interstate or foreign commerce, pursuant to certificates issued to it as a motor common carrier, over irregular routes, of general and specified commodities, including, *inter alia,* (1) such merchandise as is dealt in by wholesale or retail hardware stores, from Ellwood City, Johnstown and Philadelphia, Pa., and Cumberland, Md., to points in Virginia, and from Baltimore and Sparrows Point, Md., to points in Virginia, (2) apples from Staunton and points in Virginia within 125 miles of Staunton to Philadelphia, New York and Washington, (3) agricultural commodities and livestock from Staunton and points in Virginia and points in southeastern Pennsylvania, (4) general commodities, with exceptions, from points in the described Pennsylvania territory and Washington to Staunton and other points in Virginia, (5) poultry and poultry products from Waynesboro, Va., and nearby points, to New York City and Philadelphia, and (6) fresh and frozen fruits, vegetables, meats, poultry, eggs, and dairy products, between Crozet, Va., on the one hand, and on the other, points in 20 states, including New Jersey and New York.

Stillwell operates in interstate or foreign commerce, pursuant to certificates issued to them as a motor common carrier (1) of general commodities, with exceptions, over irregular routes, between points in Aston and Middletown Townships, Delaware County, Pa., on the one hand, and, on the other, points in the New York commercial zone as defined in New York, N. Y., Commercial Zone 1 M.C.C. 665, New Jersey, Delaware, Maryland, and the District of Columbia, (2) of household goods, over irregular routes, between Media and points within 15 miles thereof, on the one hand, and on the other, points in Massachusetts, Rhode Island, North Carolina, Virginia, Maryland, New Jersey, Delaware, the District of Columbia, and those in a defined area in New York, and (3) of general commodities, with exceptions, over a regular route between Fernwood and Wawa, Pa., serving all intermediate and eight off-route points,

restricted to service which is auxiliary to, or supplemental of, railway service.

Houff and Stillwell entered into an agreement on March 24, 1949, for the purchase of the operating rights here in controversy. To set out the purchase price, terms of payment and such other details would serve no useful purpose, as neither the Examiner nor the Commission took any exception to these matters.

Stillwell maintains office and terminal facilities at Media and operates 3 trucks and 4 tractor-trailer units. Their total revenue in 1948 (the first full year of interstate operations) was $79,462, of which $63,862 (79 per cent) was derived from the transportation and storage of household goods, $16,110 (20 per cent) from the transportation of general freight in both interstate and intrastate commerce (the latter operations embracing points within 10 miles of Media), and $510 (1 per cent) for miscellaneous services. Of the $16,110 revenue from general freight operations, approximately $2,000 was for rendering local cartage service for the railroad. Stillwell's witness was unable to break down the remainder of the general freight revenue to show the revenue received from traffic moving in interstate and intrastate commerce, but did state that the revenue received from interstate operations under the rights proposed to be sold to Houff was one-half of that received from interstate operations proposed to be sold in the Shoin case, to which later reference will be made. Stillwell desires to dispose of their general commodity operating authority, except such as authorizes service for the railroad, in order to concentrate their efforts toward expanding their household goods operations and storage warehouse business.

Houff operates 3 trucks, 22 tractors, 28 semitrailers, and maintains terminals at Weyers Cave and Baltimore. Approximately 80 per cent of its traffic consists of truckload movements. It transports in seasonal operations from Virginia points to New York City an average of one load daily of dressed poultry and two loads a week of frozen foods and represents that from 9 to 10 vehicles weekly "deadhead"

from New York City to Philadelphia for loading southbound, resulting in empty operations of approximately 1,000 miles a week at a cost of $230 a week. Its traffic southbound from the New York-New Jersey area is limited principally to seasonal operations in the transportation of frozen fruits and vegetables to Crozet. Under the unified rights, using Aston and Middletown Townships as gateways, Houff would provide a single-line irregular-route service in the transportation of general commodities from points in the New York-New Jersey area to points in Virginia and West Virginia presently served by it. It represents that shippers and consignees have requested the proposed service and that approval would permit it to eliminate empty mileage operations from New York City to the Philadelphia area. It has vehicles and terminal facilities adequate to accommodate the anticipated increase in traffic and intends to establish terminal facilities in the Philadelphia area. It estimates that had it conducted operations under the unified rights during the first three months of 1949, it would have increased its revenue by $5,000 and its net income before provision for income taxes, by $1,000 and that after one year its revenue would be increased by $40,000 a year.

The Commission concluded its report and stated its findings as follows: ·

"Operations by vendors under the rights here considered consist principally in the movement of traffic originating at points in Aston and Middletown Townships. An average of two trips a week are made northbound. With respect to destination points served, vendors' witness could recall only two points in the New York commercial zone and seven points in New Jersey near New York City on northbound shipments. On traffic moving to Aston and Middletown Townships he could recall shipments originating at one point each in the New York commercial zone and New Jersey. The major portion of the traffic has moved in less-than-truckload quantities and shipments have been transported either in conjunction with a household goods movement or have been held until a sufficient volume was accumulated to justify operations. Considering the volume of traffic handled and the frequency of service, it is apparent that vendors have conducted but limited operations under the rights proposed to be sold to vendee.

"Vendee's principal reason for acquiring vendor's operating rights is to be able to transport general commodities southbound from the New York-New Jersey area to Virginia and West Virginia points and thereby eliminate empty haul mileage to Philadelphia in connection with its present seasonal operations north of Philadelphia. Its operations northbound would be enlarged only in the transportation of agricultural commodities from Virginia points. It has never handled general commodity traffic moving southbound from the New York-New Jersey area through interchange with vendors and there is no evidence that vendors have interchanged southbound general commodity traffic with other carriers or that vendee has received any such traffic from other carriers through interchange. Under the circumstances, it is apparent that the institution by vendee of operations between the New York-New Jersey area and points in Virginia and West Virginia through use of Aston and Middletown as gateways, would bear little resemblance to the service heretofore available under vendors' rights, and would be a new service not heretofore rendered by vendee and vendors either through interchange with each other or by each with other carriers. No real evidence was submitted showing a need for the new service proposed by vendee and the mere desire by vendee to institute what, essentially, would be a new service in order to bring about a better balance in its operations north of Philadelphia and to increase its revenue, unsupported by any evidence of the need therefor, does not provide a basis sufficient for us to find that the

transaction would be consistent with the public interest. ·

"We find that the transaction proposed would not be consistent with the public interest and that the application should be denied."

In actions such as this, where specially constituted district courts are required to review orders of the Interstate Commerce Commission, the scope of such review is limited. In considering an order of the Commission authorizing the consolidation of several motor carriers under Section 5(2) of the Act, the Supreme Court, in McLean Trucking Co. v. United States, 321 U.S. 67 at pages 87 and 88, 64 S.Ct. 370, at page 381, 88 L.Ed. 544, said:

"If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order."

Hence, it would seem that the question presented here is simply this: In disapproving the acquisition by Houff of certain operating rights of Stillwell, did the Commission act arbitrarily, capriciously, or employ the wrong rule of law, or was the Commission's action within its discretion and were its findings sufficient and supported by evidence?

Of course, the burden of proof was upon the petitioners, and it is obvious that the Commission withheld its approval upon the ground that petitioners had failed to prove that their transfer of operating rights would be consistent with the public interest. We think the conclusion of the Commission was within its discretion, that it did not act arbitrarily or capriciously, that its findings were sufficient and amply supported by evidence.

Although the factual situation was somewhat different, a very similar question was presented to this court in Falwell v. United States, D.C., 69 F.Supp. 71, affirmed per curiam 330 U.S. 807, 67 S.Ct. 1087, 91 L. Ed. 1264. There, the Commission had refused to approve a purchase alleged to have been authorized under Section 5 of the Act, and we affirmed the action of the Commission. The Commission there held that the purchase was not shown to be consistent with the public interest, primarily for the reason that the uses which the purchaser proposed to make of the operating rights which he sought to purchase from the seller, were entirely different from the uses sanctioned by the Commission when it granted these rights to the seller.

A more analogous situation appears in the recent case of Shein, etc., v. United States, etc., D.C., 102 F.Supp. 320, 326. There Stillwell (the same partnership involved in this litigation) undertook to sell certain of its operating rights to Shein's Express, a common carrier by motor vehicle operating in New York, Delaware, New Jersey and Pennsylvania. The Commission's examiner recommended approval of the transfer, and upon the first hearing, the Commission adopted the examiner's report and approved the transfer. However, upon reconsideration, the Commission, through the same Division, reversed itself and denied the application. Upon appeal to a three-judge District Court in New Jersey, the court affirmed the action of the Commission for the same reasons upon which we base our conclusion here, citing with approval Judge PAUL's opinion in Falwell v. United States, supra. The Court said that the Commission applied the right rule of law and had substantial evidence to support its conclusion that the transfer would result in a "radical change in the pattern of the operations; that there would be a probable adverse effect which this would have on competing carriers; that there was a lack of evidence to show that the transaction would supply any need of the public not now being adequately met by other carriers; * * *", and was correct in its conclusion that the granting of the transfer would not be consistent with the public interest.

See also Judge DOBIE'S opinion in Virginia Stage Lines, Inc. v. United States etc., D.C., 48 F.Supp. 79.

Undoubtedly, Houff has proved that the acquisition of Stillwell's operating rights which it sought to purchase, would

enable it to conduct a more economical operation. However, that is not enough. It was the duty of the Commission to take into consideration all pertinent factors. This we think the Commission did, and properly arrived at the conclusion, that the transfer for which approval was sought would result in a new service bearing little resemblance to the service theretofore available under the seller's rights, there being a total lack of evidence that such new service would be consistent with the public interest. It is therefore our conclusion that the order of the Commission should be affirmed, and an order will be entered dismissing this action.