Sheldon A. KEY, as Trustee in Proceedings for Reorganization of Hancock Trucking, Inc., Plaintiff,

and

Hennis Freight Lines, Inc., Plaintiff-Intervenor,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Defendants,

and

Great Lakes Express Company, National Transit Corp., Jones Transfer Co., United Trucking Service, Inc., Michigan Express, Inc., Associated Truck Lines, Inc., Norwalk Truck Lines, Inc., and Interstate Motor Freight System, Intervening Defendants.

No. IP 65–C–479.

United States District Court
S. D. Indiana,
Indianapolis Division.

Dec. 21, 1966.

Bamberger & Feibleman, Ferdinand Born, Indianapolis, Ind., for plaintiff.

Raymond M. Zimmet, Interstate Commerce Commission, John H. D. Wigger, Dept. of Justice, Washington, D. C., Richard P. Stein, U. S. Dist. Atty., Indianapolis, Ind., for defendants.

Sullivan, Eames, Moody & Petrillo, Detroit, Mich., Robert C. Smith, Indianapolis, Ind., for intervening defendants.

MEMORANDUM OPINION

Before CASTLE, Circuit Judge, and HOLDER and DILLIN, District Judges.

PER CURIAM.

This action was instituted by the plaintiff, Sheldon A. Key, trustee in proceedings under Chapter X of the Bankruptcy Act for the reorganization of Hancock-Trucking, Inc., to set aside an order of

the Interstate Commerce Commission insofar as the order imposed a restriction upon the sale of Hancock, together with its operating rights as an interstate motor carrier, to Hennis Freight Lines, Inc.

The order in question approved the sale and purchase of the operating rights of Hancock, an Evansville, Indiana, interstate common carrier, subject to a restriction of Hennis' operations over certain of the Hancock routes to and from Detroit, Michigan.

The order was entered after proceedings before the Commission initiated by the joint application of Hancock and Hennis under Section 5(2) of the Interstate Commerce Act for approval of the sale by Hancock and purchase by Hennis of all the operating rights of Hancock. The joint application was made in April, 1962, after Hennis had commenced operations March 10, 1962, under a lease of Hancock's operating rights to which the Commission had given temporary approval under Sections 5 and 210a(b) of the Act. Eight motor carriers serving one or more portions of the area in which Hancock is authorized to provide service appeared before the Commission in opposition to the proposed transfer. Those carriers have been permitted to intervene as defendants in this case in which Hancock seeks review of the Commission's action. Hennis was permitted to intervene in this case as a plaintiff.

The issues presented for determination by the Court in this review proceeding are:

(1) Whether the Commission's order insofar as it imposes restrictions on the sale and purchase must be set aside for its failure to comply with the procedural requirements of Section 8(b) of the Administrative Procedure Act.

(2) Whether the imposition of the restriction which would preclude Hennis from operating over certain of the Hancock routes to and from Detroit has a rational and legal basis and is supported by substantial evidence on the record considered as a whole.

Hennis is a general commodity carrier operating over both regular and irregular routes and possessing authority to transport general commodities between points in Georgia, South Carolina, North Carolina and Virginia, on the one hand, and, on the other, points in Ohio, Indiana, those in Michigan on and south of Michigan Highway 21, and those in the Chicago commercial zone, and Baltimore, Philadelphia (and within 25 miles thereof), and New York City, and points in New Jersey within 30 miles of City Hall, New York.

Hancock operates over irregular and regular routes, in a territory generally bounded by Milwaukee, St. Louis, Evansville, Louisville, Cincinnati, Wheeling, Pittsburgh (and within 40 miles thereof), Cleveland and Detroit.

The Commission approved Hennis' acquisition of all of the operating rights of Hancock except:

"transportation of any shipment which originates at, or is destined to, a point in Michigan, exclusive of a point which is an off-route point within 15 miles of Detroit but outside the commercial zone of Detroit, on the one hand, and, on the other, is destined to, or originates at (1) a point in the Chicago, Ill., commercial zone, (2) a point in Ohio, except Lorain, Elyria, and points in the Cleveland commercial zone, and (3) Ft. Wayne, Muncie, Anderson and Indianapolis, Ind.; * * *."

Thus, the restriction complained of applies only to a portion of the general commodity, regular route rights authorized to be acquired and even on the routes to which it applies it operates to preclude only the performance of local service between Detroit and the restricted points. Under the restriction no shipment may be transported which originates at or is destined to Detroit and its commercial zone from or to another restricted point, including intermediate points on such restricted routes. The restriction does not apply, however, to shipments originating at or destined to a restricted point from or to authorized points beyond the area of restriction, to

connecting line or interchange service over the restricted routes so long as the shipments hauled had either an origin or destination beyond any two points between which the hauling of local shipments would be prohibited, or to operating rights as to traffic moving on bills of lading of freight forwarders.

Some of the pertinent factual findings made by the Examiner with respect to the "to and from Detroit" routes which were the subject of the restriction imposed are:

"* * * over recent years Hancock operations lost their competitive effectiveness, and that accordingly protestants (the 8 objecting carriers who have been permitted to intervene in the instant three-judge court case) increased their facilities to meet increased demands for service.

"Protestants generally have expanded their facilities to meet expanded demands for service and they are in a position to handle an increased volume of traffic.

"At the same time there are a substantial number of carriers serving the involved territory and competition is keen.

"The record here made affords no support for and approval of what would be tantamount to the institution of an entirely new service in competition with existing carriers, which, as the evidence shows, are transporting substantial volumes of traffic with no apparent inadequacies in their service.

"Applicants having failed to meet their burden in the first instance, the public interest requires but a few short comments with respect to the interest of the opposing carriers. As seen, particularly as applicable to the smaller carriers, their growth in traffic and revenues and financial stability has been due in some measure to the sharply curtailed service of Hancock. * * *. Hennis is a substantial carrier, revenue-wise and in carrier facilities. Under the circumstances here involved, whatever service Hennis has been pro-

viding under the temporary authority between points in the discussed territory, has been an unwarranted invasion of protestants area of service."

The Commission in its decision and order affirmed and adopted the Examiner's findings and conclusions as its own with the modification that the restriction imposed (which it rephrased for improved clarity) is also required "to prevent material adverse effects upon the operations" of the objecting carriers.

The Commission's decision and order sets forth:

"That the findings and conclusions of the hearing examiner are, except to the extent modified herein, proper and correct; that the exceptions and replies of applicants and protestants raise no new or material issues, or matters of fact or law, not adequately considered, and properly disposed of, by the hearing examiner in his report, except the issues noted in the next paragraphs (* * * the clarification of the restriction, and the finding of adverse effect on the 8 objecting carriers); and that the said exceptions and replies otherwise are not of such nature as to require the issuance by Division 3 of a report discussing the evidence in the light of such pleadings; * * *.

* * * * * *

Wherefore, and good cause appearing therefor:

We find, That the evidence considered in the light of the exceptions and replies thereto does not warrant a different result from that reached by the hearing examiner, except to the extent indicated above; that the statement of facts, the conclusions and the findings of the hearing examiner, being proper and correct in all material respects, should be, and are hereby, affirmed and adopted as our own, except to the extent specified herein; * * *."

■■ The contentions of Hennis and of the trustee, Key, that the order is invalid as not meeting the requirements

of Section 8(b) of the Administrative Procedure Act are predicated upon their arguments that the Act requires the Commission, subsequent to the filing of exceptions to the Examiner's report, to make express rulings on each of the exceptions presented giving the reasons therefor, and that a Commission decision is required to include a statement of facts and conclusions, as well as the reasons therefor, independent of the Examiner's, upon all material issues of fact, law, or discretion presented on the record. The contentions are unfounded.

The Commission complied with the procedural requirement of Section 8(b) of the Administrative Procedure Act (Title 5 U.S.C.A. Section 1007(b)) by its affirmance and adoption of the Examiner's recommended March 26, 1964 report and order as its own. This Court and the parties to the proceeding are apprised of the basis of the Commission's decision and order by looking to the total record, including the Examiner's report and recommended order. The Examiner was obligated under Section 8(b) of the Administrative Procedure Act (Title 5 U.S.C.A. Section 1007(b)) to record his report and recommended order and include therein a statement of his findings and conclusions, as well as the reasons or basis therefor, upon all of the material issues of fact, law, or discretion presented on the record, and a statement of his appropriate order granting or denying the Hancock and Hennis requested approval of the sale and transfer of the certificate. If the Examiner complied with the Administrative Procedure Act, it was useless for the Commission to restate his report and order to further particularize upon the issues. This Court and the parties to the proceeding are also apprised of the basis of the Commission's decision and order disposing of all of the parties' exceptions to the Examiner's report and recommended order, and the basis of its denial of the parties' petition for reconsideration of the decision and order in question and the parties' petition to have the Commission declare the matter as one involving an issue of general transportation impor-

tance, by the total decision of the Commission, including that adopted from the Examiner's report and recommended order.

The Commission's decision and order not only adopted the report and recommended order of the Examiner but discloses it fulfilled the duty placed upon the Commission to be informed and adjudicate the issues by approving part, and modifying part of the Examiner's report and recommended order and rendering additional findings. Pertinent illustrative parts of the Commission's decision and order explain the diligence of the Commission:

" * * *.

Upon consideration of the applications and the record in the above-entitled proceedings, including the report and recommended order of the hearing examiner served April 15, 1964, the exceptions thereto filed by applicants, and jointly by protestants, * * * and the replies of each of the other, and

*It appearing,* That the findings and conclusions of the hearing examiner are, except to the extent modified herein, proper and correct; that the exceptions and replies of applicants and protestants raise no new or material issues, or matters of fact or law, not adequately considered, and properly disposed of, by the hearing examiner in this report, except the issues noted in the next paragraphs; and that the said exceptions and replies otherwise are not of such nature as to require the issuance by Division 3 of a report discussing the evidence in the light of such pleadings; and

\* \* \* \* \* \*

*It further appearing,* That another of the conditions recommended by the hearing examiner provided for the following: That the general commodity rights acquired shall be modified to provide that no shipments may be transported which originate at or are destined to Detroit, Mich., and all other points in Michigan not including off-route points within 15 miles of

Detroit which are located beyond the Detroit commercial zone, on the one hand, and, on the other, (1) Chicago, Ill., and points within its commercial zone, (2) Ft. Wayne, Muncie, Anderson, and Indianapolis, Ind., and (3) points in Ohio, not including Lorain, Elyria, Cleveland, Ohio, and points in the Cleveland commercial zone;

*And it further appearing,* That the foregoing service restriction, as rephrased for improved clarity in the first ordering paragraph hereof, is required to prevent material adverse effects upon the operations of protestants;

Wherefore, and good cause appearing therefor:

*We find,* That the evidence considered in the light of the exceptions and the replies thereto does not warrant a different result from that reached by the hearing examiner, except to the extent indicated above; that the statement of facts, the conclusions, and the findings of the hearing examiner, being proper and correct in all material respects, should be, and they are hereby, affirmed and adopted as our own, except to the extent specified herein; and

*It is ordered,* That the order of the hearing examiner served April 15, 1964, recommending conditional approval of the transactions, be, and it is hereby, adopted as the order of the Commission, Division 3, effective 35 days from the date of service of the order; *provided, however,* (1) that conditions (a) and (b) in the examiner's findings, be, and they are hereby, modified so as to authorize the payment of interest at the rate of 6 percent per annum, on the unpaid balance, as indicated above, and (2) that the first proviso in the examiner's findings (containing the service restriction referred to in the fourth appearing paragraph hereof), be, and it is hereby rephrased as follows:

'*provided, however,* that, if the transactions herein authorized are consummated and coincidentally

therewith, the operating rights to transport general commodities over regular routes acquired thereby shall be modified by imposition of a restriction against transportation of any shipment which originates at, or is destined to, a point in Michigan, exclusive of such a point which is an off-route point within 15 miles of Detroit but outside the commercial zone of Detroit, on the one hand, and on the other, is destined to, or originates at, (1) a point in the Chicago, Ill., commercial zone, (2) a point in Ohio, except Lorain, Elyria, and points in the Cleveland commercial zone, and (3) Ft. Wayne, Muncie, Anderson, and Indianapolis, Ind.;' and

\* \* \*."

The procedure practiced by the Commission in the use of the short form was advisedly done. Attorney General's Manual on the Administrative Procedure Act (1947) at page 86. It has been approved in judicial review. Younger Brothers, Inc. v. United States, 238 F.Supp. 859 at pages 860 and 861 (S.D. Tex.1965); North American Van Lines, Inc. v. United States, 217 F.Supp. 837 (N.D.Ind.1963).

The contention of inconsistency in the findings of the Commission is also unfounded. The protestant carriers asserted that certain major portions of the operating rights of Hancock were dormant. The protestants' claim of complete dormancy as to the whole or any of the routes was rejected in the Commission's findings. Hennis and the trustee contend the restriction of the routes in the Commission's order is, nevertheless, based on dormancy. The record does not support such assumption. The findings clearly state that the disapproval of the transfer of these particular routes was approached by the Commission from the standpoint that Hennis' entry on these routes was the institution of an entirely new service in competition with other carriers who were providing all the service the public needed and would be adversely affected by the entry of Hennis with no resulting

benefit to the public. It was unnecessary for the Commission to have found complete dormancy. The Commission did find that for several years Hancock had not been in "active competition" on the restricted routes. The evidence supports this as Hancock's shipments over the restricted routes were insignificant. The small amount of business warranted the approach of the Commission to determine whether or not Hancock should be permitted to transfer the routes in issue.

■ The contention that the restriction of the routes in issue is unsupported by susbtantial evidence is also unfounded. The record demonstrates Hancock's operations, including those reflected by the shipments during the periods September 1, 1961 through February 28, 1962 and March 1, 1961 through August 31, 1961. Hancock was not an effective competitor on the routes in issue as correctly found by the Commission. The record supports the finding that Hennis would compete aggressively for local traffic on the routes in issue which would be tantamount to authorizing institution of a new service in competition with other carriers adequately servicing them. The applicants have failed of record to prove that there existed a public need for additional competitive service between the points in issue, or that the services of the other carriers were inadequate. There is substantial evidence that for a number of years Hancock was not an effective competitor on the routes in issue which permitted other carriers operating over the same routes to expand their facilities and equipment to increase their services and it would be rank speculation to assume that Hennis would not substantially affect such carriers who have expanded to fulfill the needs of the shippers. The results of Hennis' operations during the period of its temporary authority are not conclusive and are insufficient to support its burden of proof. The Commission found that:

"During 1954, when Key, as trustee, took over the Hancock operations, the carrier had in operation a fleet of about 600 tractors, trailers and trucks. At such time company-owned terminals were located at Detroit and Evansville and it leased terminals at Pittsburgh, Cleveland, Chicago, Columbus, Louisville, St. Louis, and Milwaukee. Shortly prior to temporary authority or about February 8, 1962, when Hancock had ceased operations because of cancellation of insurance coverage, it had terminals in operation at the same points, except Pittsburgh, and also at Cincinnati and Indianapolis. The size of Hancock's fleet of equipment as of February 8, 1962, is not of record, but upon the exercise of temporary authority, Hennis employed about 118 Hancock employees made up principally of the following: 45 line-haul drivers, 63 local city drivers, 11 dock employees, including 5 of a supervisory capacity, and several office employees. * * *.

Hennis operates approximately 2,200 pieces of equipment, consisting principally of 1,300 semitrailers, 625 tractors, and 150 pickup trucks, in the territory covered by the Hancock rights, and maintains terminals at Akron, Chicago, Cincinnati, Indianapolis, Louisville, Milwaukee, Pittsburgh, St. Louis and Toledo. The St. Louis and Milwaukee terminals were established following temporary authority. Maintenance facilities for the servicing of over-the-road and city equipment are located at the Chicago, Cincinnati, Detroit and Toledo terminals. Hennis also has cartage agents at Cleveland, Columbus, Evansville, South Bend and Fort Wayne, Ind., and Peoria, Ill. At the above-described terminal and cartage points, Hennis has stationed a total of 32 pickup trucks, 35 city tractors, 105 city trailers, 356 line-haul trailers, and 46 line-haul tractors. Similarly stationed at the same points are about 481 Hennis employees in all classifications of operations including office, shop and garage, platform, city and road drivers, sales and safety. * * *.

For the year 1961, operating revenues of Hennis were $23,104,684, and

its net income after provision for income taxes was $677,761. For 1960 and for the eleven months ended November 30, 1961, Hancock's revenues were $5.2 and $3.2 millions, and it sustained deficits of $762,406 and $1,-410,683, respectively. As seen in March, 1962, Hennis commenced operation of the Hancock rights under temporary authority. For the entire year 1962, including the approximate 9 months of operations under the temporary unified rights, Hennis had revenues of $29,356,553, and net income after provision for income taxes of $849,787. In other words, for 1962 as contrasted to 1961, Hennis enjoyed increases in revenues of $6.3 million and in net income of $172,026. Also for 1962 Hennis had an operating ratio of 91.4 and it is quite apparent that it has achieved substantial economies in the combined operations of the Hennis and Hancock rights. All circumstances considered, the Hennis' forecast that in operations under the combined rights for 1963, it will have realized revenues of $38,103,450, and net income after provision for income taxes of $1,070,622 is well supported. * * *."

The Commission justly concluded thereon that Hennis would be a considerably more aggressive competitor than Hancock and its operations would amount to a new service.

The proceedings were not viewed by the Commission, and rightly so, as merely a contest between competing carriers. The Commission was presented with the question of approving a new service and it had the responsibility of promoting not only an adequate but also an economical national transportation system, pursuant to the National Tranportation Policy.

■ The Commission has consistently refused to approve the purchase of motor carrier operating rights under Section 5(2) of the Act, where as here, operation of the acquired rights by the vendee is found to result in the institu-

tion of a new and additional competitive service, in the absence of a showing, similar to that required under Section 207 of the Act, that there is a public need for such service. We agree with its application of the law. The Commission has precedent for its application of the law in decided cases. Shein v. United States, 102 F.Supp. 320 (D.N.J.1951), affirmed per curiam, 343 U.S. 944, 72 S.Ct. 1043, 96 L.Ed. 1349 (1952); Great Coastal Express, Inc. v. United States, 243 F.Supp. 943 (E.D.Va.1965), affirmed per curiam, 382 U.S. 369, 86 S.Ct. 546, 15 L.Ed.2d 424 (1966); and Houff Transfer v. United States, 105 F.Supp. 851 (W.D.Va.1952). The holding is succinctly stated at page 324 of 102 F.Supp. in the cited Shein v. United States case as follows:

> "It is so well established that the citation of authorities is unnecessary, that if Shein had applied to the Commission for a certificate of convenience and necessity to operate over a regular route in this territory that the burden would have been upon it (Shein) to prove, by competent evidence to the satisfaction of the Commission, that the public interest required such service. May it then attempt to attain this end result indirectly by the purchase proposed here without carrying the burden of proof incumbent upon it if it was attempted directly? We think not and we think that the Commission applied the right rule of law in reaching its conclusions."

■ The restriction of routes imposed by the decision and order of the Commission has a rational basis and is supported by substantial evidence which is the limit of this Court's reviewing authority. Gilbertville Trucking Co. v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L.Ed.2d 177 (1963); McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944). We recognize the concern of the trustee over the resulting loss to the bankrupt's creditors from the Commission's decision and

order. The record did not warrant the Commission under the law to reach any other conclusion.

It is adjudged that the decision and order of the Commission is sustained.