**BLUE RIDGE TRANSFER COMPANY, Inc., Hemingway Transport, Inc., Roy Stone Transfer Corporation, Virginia-Carolina Freight Lines, Inc., and Wilson Trucking Corporation, Plaintiffs,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

and

**Colonial Motor Freight Line, Inc., Intervening Defendant.**

**Civ. A. No. 67-C-78-R.**

United States District Court
W. D. Virginia,
Roanoke Division.

April 12, 1968.

Linwood Holton, Eggleston, Holton, Butler & Glenn, Roanoke, Va., John C. Bradley, Richard R. Sigmon, Rice, Carpenter & Carraway, Washington, D. C., for plaintiffs.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Thomas B. Mason, U. S. Atty., Roanoke, Va., for the United States.

Robert W. Ginnane, Gen. Counsel, John E. Faulk, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

E. Griffith Dodson, Jr., Dodson, Pence, Coulter, Viar & Young, Roanoke, Va., Harry C. Ames, Jr., Wilmer A. Hill, Ames, Hill & Ames, Washington, D. C., for Colonial Motor Freight Line, Inc.

Before Butzer, Circuit Judge, Barksdale, Senior Judge, and Merhige, District Judge.

BUTZNER, Circuit Judge:

The Interstate Commerce Commission approved the purchase by Colonial Motor Freight Line, Inc., of a portion of the motor carrier operating rights issued to the Bruce Johnson Trucking Company, Inc., and the acquisition of control of the operating rights.[1] The plaintiffs, competing carriers, assert that the Commission's approval lacks substantial supporting evidence and that it does not accord with the provisions of § 5(2) of the Interstate Commerce Act[2] and the National Transportation Policy.[3] We find no infirmity in the Commission's order.

Section 5(2) of the Act [49 U.S.C. § 5(2)] provides in part:

"(2) (a)—It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) * * *

"(i) * * * for any carrier * * * to purchase, lease, or contract to operate the properties, or any part thereof, of another * * *

"(2) (b) * * * If the Commission finds * * * the proposed transaction is within the scope of subdivision (a) * * * and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications * * * found to be just and reasonable * * *"

The National Transportation Policy, "which is the Commission's guide to 'the public interest,'" McLean Trucking Co. v. United States, 321 U.S. 67, 82, 64 S.Ct. 370, 378, 88 L.Ed. 544 (1944), requires the Commission "to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers."

As one means among others of implementing this policy, the Commission established its "new service" doctrine—or as it is sometimes called, the "substantiality test"—which recognizes that acquisition of motor carrier operating rights that will permit the purchaser

1. Colonial Motor Freight Line, Inc.—purchase (portion)—Bruce Johnson Trucking Co., Inc., 101 M.C.C. 770 (1967).

2. 49 U.S.C. § 5(2).

3. 49 U.S.C., preceding § 1.

to establish a new competitive service in an area already adequately served by other carriers is not consistent with the public interest in the absence of evidence showing a real need for the new service. See Newsom Trucking Co., Inc.—purchase—Crutcher Bros. Co., 85 M.C.C. 230, 233 (1960); LaMere and Conroy—purchase—Ziffrin Truck Lines, Inc., 55 M.C.C. 501, 514 (1949). The application of the new service doctrine presents the principal issue in this case. No claim is made that transportation service in the area in inadequate. The parties are in agreement that the primary question is whether Johnson, the vendor, actually has been conducting substantial operations under its certificate. If it has, the purchase of its operating rights by Colonial will not result in any significantly new competition with other carriers in the area. If, however, Johnson has not been conducting substantial operations, the transfer of its operating rights to Colonial in effect will create a new service warranting disapproval of the transaction. Cf. Houff Transfer, Inc. v. United States, 105 F.Supp. 851 (W.D.Va. 1952). The hearing examiner concluded that Johnson's operations did not constitute substantial service and recommended denial of the application. A division of the Commission (one member dissenting), accepting the underlying facts found by the examiner, reached a different conclusion and approved the transaction.

Both Colonial and Johnson are authorized to operate as motor common carriers of general commodities. Colonial's operations extend over regular routes generally between Charlotte and Marion, North Carolina, on the south, and Baltimore, Maryland, on the north via Richmond, Virginia, and over irregular routes through North Carolina, most of South Carolina and points in eastern Tennessee.

The rights Johnson proposes to sell authorize transportation between points in North Carolina within 40 miles of Charlotte and places in Virginia bounded by an arc extending from Cape Henry through Richmond and Staunton to Bristol.[4] The area embraces approximately two-thirds of the state and all Virginia cities with population in excess of twenty thousand, except those in Northern Virginia. The proposed acquisition will enable Colonial to provide a direct service between places in North Carolina and Virginia, thus eliminating interline at Richmond and other points.

The plaintiffs are larger carriers than either Colonial or Johnson. They operate hundreds of units of equipment and transport a large volume of traffic between points in Virginia and North Carolina.

Johnson maintained a terminal at Richmond and an agency at Norfolk. Its operating rights contemplate transportation for irregular call-and-demand service. It solicited traffic moving to and from Virginia and never refused shipments tendered it. Its tariffs allowed handling interline traffic with twenty-five other carriers, including Colonial, with which it has interlined for more than four years.

During the six months from March to August 1965, a representative traffic study of 39 days disclosed that Johnson transported 429 shipments, weighing 2,-658,003 pounds. Although the predominant flow of traffic was from Richmond to North Carolina, it participated in shipments from 44 points in the state. Nearly all of the shipments originating in the area were from Richmond. Ninety-nine deliveries were to Richmond, 43 into the Norfolk area, and 29 to fourteen scattered points in the south-central part of the state. Approximately one-fifth of Johnson's revenue for 1965 was derived from the Virginia traffic.

Obviously the evidence did not require the Commission to find that Johnson's operating rights lay dormant. For this reason many of the cases the plaintiffs cite to illustrate the applica-

---

4. Colonial has operated the Johnson properties since January 3, 1966, under temporary authority granted by the Commission. 49 U.S.C. § 310a(b).

tion of the new service doctrine are not controlling. In reaching its conclusion that Johnson rendered substantial service, the Commission observed that carriers providing a call-and-demand service are not required to show service at all points within the authorized territory to demonstrate that their operations have been continuous and substantial. With this type of service the number of shipments in any period is influenced by the varying day-to-day transportation needs of the area.

The plaintiffs urge that Johnson's holding itself out for service was insufficient to establish substantial service. The other parties do not dispute that holding out with nothing more is insufficient, but they emphasize that Johnson coupled its holding out with actual service consistent with its size, financial ability, and the restrictive nature of its operating certificate. The Commission properly considered all of these factors and did not base its decision on "holding out" alone.

The Commission did not ignore the plaintiffs' fear that the transfer would result in a diversion of traffic from them, but it pointed out that the plaintiffs had failed to prove that any significant diversion would be likely. Cf. Interstate Motor Freight Sys. v. United States, 243 F.Supp. 868, 872 (W.D.Mich., 1965).

■ Despite the plaintiffs' assertion to the contrary, we find the Commission did not depart from its established policy. The plaintiffs cite no case similar to this in which an opposite result was reached. Indeed, the Commission, in concluding that Johnson's substantial service justified the acquisition, applied the test the plaintiffs deem appropriate. What constitutes substantial service in a given case is a question of fact. In Alton R. R. Co. v. United States, 315 U.S. 15, 23, 62 S.Ct. 432, 437, 86 L.Ed. 586 (1942), the Court, referring to evidence of the "bona fide operation" of a carrier, said:

"The weighing of such evidence involves in part a judgment based on the characteristics of the highly specialized transportation service involved. Thus, as we have said, that function is peculiarly one for the Commission not the courts."

■ Substantial evidence in the record, considered in its entirety, supports the Commission's finding that Colonial's purchase of Johnson's operating rights is consistent with the public interest. The plaintiffs have not demonstrated that the Commission's appraisal is without substantial factual foundation or that it is unsound in law. Under these circumstances the complaint and action must be dismissed. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Great Coastal Express, Inc. v. United States, 243 F.Supp. 943 (E.D. Va.1965), aff'd 382 U.S. 369, 86 S.Ct. 546, 15 L.Ed.2d 424 (1966).