**GARRETT FREIGHTLINES, INC., a corporation, et al., Plaintiffs,**

v.

**The UNITED STATES of America, Defendant, and Interstate Commerce Commission, South Bend Transfer, Inc., a corporation, and Puget Sound Truck Lines, Inc., a corporation, Intervenors-Defendants.**

**Civ. No. 514-72C2.**

United States District Court,
W. D. Washington, N. D.

Jan. 24, 1973.

George R. LaBissoniere, Seattle, Wash., for plaintiffs.

Thomas E. Kauper, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Stan Pitkin, U. S. Atty., Seattle, Wash., for defendant.

Fritz R. Kahn, Gen. Counsel, James F. Tao, Atty., I. C. C., Washington, D. C., for intervenor-defendant, I. C. C.

Clyde H. MacIver, MacBride, Sax & MacIver, Seattle, Wash., for intervenors-

defendants South Bend Transfer, Inc. and Puget Sound Truck Lines.

Before KILKENNY, Circuit Judge, and EAST and GOODWIN, District Judges.*

## DECISION

EAST, District Judge:

The Plaintiffs, Garrett Freightlines, Inc., O.N.C. Motor Freight System and Silver Eagle Company (Plaintiffs) seek through these proceedings to set aside and annul an order of the Intervenor-Defendant Interstate Commerce Commission (Commission), made and entered pursuant to the provisions of Section 5 (2) of the Interstate Commerce Act, 49 U.S.C. and authorizing the Intervenor-Defendant. Puget Sound Truck Lines, Inc. (Puget Sound), to purchase and put in operation certain motor operating rights of the Intervenor-Defendant, South Bend Transfer, Inc. (South Bend).

Commission, Puget Sound and South Bend urge the validity of the Commission's order.[1]

## JURISDICTION

We note this Court's jurisdiction under 49 U.S.C. Sections 17(9), 305(g), 305 (h) and 28 U.S.C. Sections 1336, 1398 and 2284.

## FACTS

South Bend, prior to the sale, held operating authority from the Commission to transport freight between such points as Portland, Oregon and Cosmopolis, Washington. Puget Sound, on the other hand, has held Commission authority for some time to transport freight between Cosmopolis and such other points in the State of Washington as Everett, Seattle, Tacoma, Olympia and Aberdeen. Through the purchase of South Bend's authority and connecting or tacking[2] it with its own existing authority at the common point of Cosmopolis, Puget Sound is now able to render a through service for shippers between the various points in Washington and Portland, Oregon.

The Commission made extensive findings of fact as to the past satisfactory service history of Puget Sound and South Bend under their respective authorities, the economic reasons for the sale and purchase arrangement and approved the same. Suffice, here the service under the respective authorities had been for many years and was active and virile.

The Commission's order of August 25, 1971, the only order of the Commission in the proceedings that is challenged, was an amendatory order entered by Division 3, an Appellate Division, amending the

---

* Honorable John F. Kilkenny, Senior United States Circuit Judge for the Ninth Circuit, William G. East, Senior United States District Judge for the District of Oregon, William N. Goodwin, United States District Judge for the Eastern District of Washington, constituting a statutory three-judge district court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated August 9, 1972.

1. The proceedings before Commission are entitled I.C.C. Docket No. MC–F–10505, Puget Sound Truck Lines, Inc.—Purchase (Portion)—South Bend Transfer, Inc., and were instituted on June 11, 1969. In July, 1971, the Commission granted Puget Sound temporary authority to conduct operations under South Bend's authority without tacking restriction. On August 25, 1971 the final order under challenge here was entered.

2. "Tacking" is the joining of separate grants of operating authority held by a single carrier by routing shipments through a point common to such separate authorities so as to provide a through service. Chemical Leaman Tank Lines, Inc. v. United States, 298 F.Supp. 1269 (D.Del.1969) ; Braswell Motor Freight, Inc. v. United States, 336 F.Supp. 709, 711, n. 1 (C.D.Cal.1971) ; and Frozen Foods Express, Inc. v. United States, 346 F.Supp. 254, n. 5 (W.D.Tex.1972). For example, a carrier holding separate operating authorities, one authorizing service from point A to B, and the other from point B to C, can tack the authorities together and provide a through service from A to C by operating via B.

decision and order of Review Board Number 5, dated January 28, 1971 which affirmed the order of the Hearing Examiner, served August 14, 1970. That amendatory order provided, inter alia:

"*It appearing,* . . . applicants seeks (sic) reconsideration only insofar as the Review Board affirmed the recommended order of the Hearing Examiner which imposed a tacking restriction on the unified operating rights resulting from the transaction;" (sale and purchase arrangement)

"*It further appearing,* that under present policy, grants of authority will not be encumbered with restrictions against tacking unless protestants show, which they have not on this record, that they will be materially and adversely affected by the failure to impose such restriction, Rawlings Extension-Emporia, 78 M.C.C. 636, and Fox-Smythe Transp. Co. Extension—Oklahoma, 106 M.C.C. 1; and that the said restriction should be eliminated from the decision and order of January 28, 1971;"

"*It is ordered,* That the petition, to the extent it seeks reconsideration be, and it is hereby, granted, the proceeding be, and it is hereby, reopened, and that the findings in the Decision and Order of January 28, 1971, be, and they are hereby modified to reflect approval of the transaction without the tacking restriction;" and

"It is further ordered, That the decision and order of January 28, 1971, as modified herein, shall be effective 35 days from the date this order is served."

The Hearing Examiner's findings and order generally approved the sale-purchase arrangement and authorized Puget Sound to put into operation the joint authorities, however with tacking restriction at Cosmopolis. The basis of the tacking restriction was Puget Sound's failure to prove a public necessity and convenience for the through route, as expounded in Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98 (D.C.W.D.Tex.1967), affirmed P.C. 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779.

## PLAINTIFFS' OBJECTIONS

The plaintiffs are three motor carriers operating between Portland, Oregon and points in Washington, including some points now served by Puget Sound, and challenge the Commission's decision and order thereunder on the sole ground that Puget Sound, as a single entity holding the two authorities, cannot now provide the through service.[3] They contend that the Commission's decision and order thereunder is unlawful:

First, because Puget Sound has failed to prove, and the Commission has failed to find, a public convenience and necessity for the "new" proposed through service arising from the tacking privilege. They cite as authority *Braswell,* supra, at p. 102:

"It is clear that in a Section 5(2) case involving a proposed new service, the applicant must show a public need for the service proposed. Otherwise, existing services are entitled to protection from the establishment of additional competition. This rule certainly applies to this case and *there must be an equivalent* of the showing of public convenience and necessity where an applicant seeks new operating authority in a Section 207 proceeding. Since the public interest requires that carriers already in a territory be protected, it is immaterial whether the attempt to invade is made through an

3. It is of interest to note that Puget Sound and South Bend, as separate entities, held the statutory right (49 U.S.C. § 316) of interlining their respective cargos for through services, but they elected not to do so. "'Interlining' or 'interchanging' is the transfer of goods between carriers for the through movement of freight from origin to destination." Braswell Motor Freight, Inc. v. United States, 336 F.Supp. 709, 711 n. 1 (C.D.Cal.1971); Frozen Foods Express, Inc. v. United States, 346 F.Supp. 254, n. 5 (W.D.Tex. 1972).

application under Section 5 or one under Section 207. * * * " (italics supplied) Similarly, Key et al. v. United States, 263 F.Supp. 544 (D.C.Ind. 1966).

Therefore, the Commission acted "arbitrarily, capriciously and abused its discretion" in erasing the tacking restriction via the amendatory order of August 25, 1971.

Secondly, the Commission acted "arbitrarily, capriciously and abused its discretion" in removing the tacking restriction when the Examiner had found, and it failed to find, that the operations at Cosmopolis between Puget Sound and South Bend were dormant, prior to the sale-purchase arrangement, in the sense that they had never interlined any traffic under their respective authorities. The Examiner had found such dormancy and therefore, under all past Commission precedents, a tacking restriction would have to be imposed.

## DISCUSSION

■ We consider Plaintiffs' second contention without merit. True, the Commission may well require a showing of public necessity for and ability to perform when a long-sleeping authority is attempted to be put into service by a proposed purchaser. But that is a far cry from the policy of the Commission, in line with its obligation under the National Transportation Policy, 49 U.S.C., preceding Section 1, to permit one acquiring entity to completely service its own and newly acquired active, virile authorities by a tacking program.

There is no authority that the non-use, or non-implementation of the continuing statutory privilege of interlining by two separately held active authorities constitutes a waiver of that privilege or a "dormant" authority in any sense.

The Plaintiffs' first contention does warrant some consideration.

*Braswell*, supra, and *Key*, supra, do sustain the contention; however, those decisions and similar prior decisions of the Commission have been by now eroded into oblivion.

Section 5(2)(b) of the Interstate Commerce Act, 49 U.S.C., specifically provides in part:

"If the Commission finds that, *subject to such terms and conditions* and such modifications *as it shall find to be just and reasonable*, the proposed transaction (sale and purchase arrangement as here presented) is within the scope of sub-paragraph (a) and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable." (emphasis added)

■ The Commission is thus authorized to approve such transactions, subject only to such conditions as it shall find to be just and reasonable, all in the context of "public interest." The Commission has a definitively decided policy that a "no tacking" restriction is *not* a just and reasonable condition to impose upon a grant of authority absent a compelling showing by existing competing carriers, such as the plaintiffs here, that they will be materially and adversely affected by such tacking. Fox-Smythe Transp. Co. Extension—Oklahoma, 106 M.C.C. 1, 13, 15, 18 (1967), cited with approval by three-judge district courts in Howard Hall Co. v. United States, 332 F.Supp. 1076, 1082 (N.D.Ala.1971); and Frozen Foods Express, Inc. v. United States, 328 F.Supp. 666 (N.D.Tex.1971).

The reason for such policy is quite evident and is rooted in the National Transportation Policy. As the Commission explained in the major case of *Fox-Smythe*, supra, a "no tacking" restriction is unduly limiting by preventing a motor carrier from rendering a complete and efficient service for shippers. (106 M.C.C. at 13, 15, 18).

■ *Frozen Foods*, supra, teaches us that "before . . . no-tacking . . . restrictions will be imposed, the protesting carrier(s) (Plaintiffs) must show

that (they) will be materially and adversely affected if no restriction is granted", citing *Fox-Smythe,* supra; and further, "'A mere showing that tacking possibilities exist and that an applicant may avail itself of them is not sufficient showing by a protestant to warrant a restriction against tacking.' Howard Hall Co. v. United States, 332 F.Supp. 1076, 1082 (N.D.Ala.1971); *accord,* Ashworth Transfer, Inc. v. United States, 315 F.Supp. 199, 201–202 (D.Utah 1970);" and cases cited.

 The evidence before the Commission was conflicting and the Commission found that the Plaintiffs had ". . . not on this record, (shown) that they will be materially and adversely affected by the failure to impose (the no-tacking) restriction."

It is not our function to weigh the evidence. The test is whether the action of the Commission is supported by substantial evidence on the record viewed as a whole. Illinois Cent. R. R. v. Norfolk & W. R. R., 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966); Gilbertsville Trucking Co. v. United States, 371 U.S. 115, 126, 83 S.Ct. 217, 9 L.Ed. 2d 177 (1962). "Furthermore, 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)."

It is manifestly clear from the record that there was before the Commission substantial evidence to support and a rational basis for its decision and order granting the sale-purchase arrangement without the tacking restriction in the exercise of its expertise in determining the public needs in national transportation.

## CONCLUSIONS

Accordingly, we conclude that:

(1) The apparent holdings of *Braswell* and *Key,* supra, to the effect an applicant under Section 5(2) must show and the Commission must find, an equivalent of the showing of public convenience and necessity required of a new operation under Section 207 of the Act, is not now the law and binding upon the Commission nor us in this case;

(2) The amendatory order was not arbitrary or capricious and the Commission did not abuse its discretion in removing the tacking restriction and ultimately authorizing the tacking of the two authorities at Cosmopolis;

(3) The actions of the Commission in all things in Docket No. MC–F–10505 should be affirmed; and

(4) The Plaintiffs' Complaint and cause should be dismissed.

It is so ordered.