## PUGET SOUND TRUCK LINES, INC., Petitioner,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Respondents.

No. 75–3776.

United States Court of Appeals, Ninth Circuit.

July 1, 1977.

Clyde MacIver, MacBride, Sax & MacIver, Seattle, Wash., argued, for petitioner.

Walter H. Walker, Asst. Gen. Counsel, Fritz Kahn, Gen. Counsel, Robert Oswald, Secy., I. C. C., Washington, D. C., Thomas E. Kauper, Robert B. Nicholson, John J. Powers, Atty., Anti-Trust Div., U. S. Dept. of Justice, Washington, D. C., argued, for respondents.

Before LUMBARD,* WRIGHT and ANDERSON, Circuit Judges.

LUMBARD, Circuit Judge:

Puget Sound Truck Lines, Inc. petitions, under 28 U.S.C. § 2342(5), for review of an Interstate Commerce Commission cease and desist order entered on February 11, 1975, which prohibits it from performing certain motor common carrier operations along Interstate Highway I–5 in Washington. Petitioner contends these operations are authorized under the Commission's "superhighway rules," 49 C.F.R. § 1042.3. In its report and order, 120 M.C.C. 892, the Commission held *inter alia* that petitioner's superhighway operations do not qualify under the superhighway rules because they and petitioner's authorized route deviate from one another by more than 25 miles. On this basis we deny the petition.

Puget Sound is a Washington corporation which holds ICC operating authority for the transportation of general commodities be-

* Senior Circuit Judge, for the Second Circuit.

tween Portland, Oregon and Seattle, Washington, but only by a circuitous route: it holds "regular route" authority running north along Interstate Highway I–5 from Portland to Chehalis, Washington, and thence west to South Bend, Washington; between South Bend and Aberdeen, Washington, to the north, it operates pursuant to "nonradial irregular-route" authority which allows carriage between any two points within twenty miles of South Bend; and it holds regular route authority from Aberdeen east to Olympia, Washington, and thence north along I–5 to Seattle. The Portland-to-Aberdeen authorities were acquired by purchase approved by the Commission in July 1971. See *Garrett Freightlines, Inc. v. United States*, 353 F.Supp. 1329 (W.D.Wash.1973) (three-judge court).

In 1972 the ICC detected Puget Sound's trucks travelling all the way between Portland and Seattle via I–5 without using the circuitous Chehalis-South Bend-Aberdeen-Olympia route, and the Commission instituted cease and desist proceedings. The distance from Chehalis to Olympia is 21 miles over I–5 as opposed to 120 miles over Puget Sound's authorized route through South Bend and Aberdeen, and portions of the authorized route are more than 25 miles from I–5.[1]

Puget Sound defends its use of I–5 as proper under the ICC's superhighway rules for motor common carriers of property, 49 C.F.R. § 1042.3, which allow carriers to switch from authorized routes to superhighway routes under certain specified circumstances.

[C]ertificates of public convenience and necessity authorizing the transportation of general commodities . . . over a regular service route or routes . . . shall be construed as authorizing operations over superhighways . . . [if] the superhighway route . . . between the point of departure from and the point of return to the carrier's authorized regular service route or routes, (i) extends in the same general direction as the authorized service route or routes, and (ii) is wholly within 25 airline miles of the carrier's authorized regular service route or routes . . . . .

49 C.F.R. § 1042.3(a)(1). I–5 meets the definition of "superhighway," id. § 1042.-3(c).

On March 18, 1974, the administrative law judge ruled for Puget Sound on the ground that the I–5 superhighway route runs between two points on Puget Sound's authorized regular routes, runs in the same general direction, and is never more than 25 miles from those points. The Commission reversed on three independent grounds: first, Puget Sound does not have full regular route authority between Olympia and Chehalis since its authority between Aberdeen and South Bend is only for irregular routes; second, the I–5 superhighway route does not "extend in the same general direction as" Puget Sound's authorized route since portions of the latter run perpendicular to the former; and third, Puget Sound's authorized route between Olympia and Chehalis is not wholly within 25 miles of I–5.[2]

1. According to testimony and photographic evidence presented to the administrative law judge, the circuitous route includes long stretches of very old and narrow roadway which is poorly suited to heavy truck traffic. The route passes through the main streets of four small communities, and lack of shoulders, sharp curves, and occasional heavy fog conditions add to the hazard. The roundabout journey takes roughly two hours longer and requires approximately 25 more gallons of fuel than the same trip along I–5. Nevertheless, Puget Sound says it plans to continue transporting goods from Seattle to Portland even if forced to use the longer route. However, there is no evidence that Puget Sound, or any other trucker, has ever used the longer route for Seattle-Portland operations in the past.

Several other carriers have ICC certificates for the direct I–5 route, and they have successfully opposed Puget Sound's efforts to obtain a certificate of public and necessity from the Commission. See *In re Application of: Puget Sound Truck Lines, Inc.*, For Elimination of Gateway, No. MC–85255 (Sub.N. 49) (Nov. 10, 1975). Of course, our decision here in no way precludes Puget Sound from seeking judicial review of that decision.

2. The United States has filed a brief in support of the Commission's decision.

We need address only the third rationale. The rules require that the super-highway route be "wholly within 25 airline miles of the carrier's authorized regular service route or routes." Puget Sound says it has met this condition because every point on the new superhighway route is no more than 25 miles from some point on Puget Sound's authorized routes. However, the Commission has consistently interpreted the rule to require also that the authorized route be wholly within 25 miles of the superhighway route. Commercial Motor Freight, Inc., Extension—Crawfordsville, Ind., 114 M.C.C. 500, 519–20 (1971); Property Motor Carrier Superhighway Rules, 117 M.C.C. 514, 150 n.10 (1972); *Associated Truck Lines, Inc. v. Wolverine Express, Inc.*, 123 M.C.C. 206, 220 (1975). Although Puget Sound's interpretation is the more literal, the Commission's seems fully consistent with the policies underlying the superhighway rules.

The purpose of the superhighway rules is to expedite changeovers from antiquated authorized routes to new superhighways without upsetting the existing competitive balance preserved by ICC regulations. See Motor Service on Interstate Highways—Passengers, 110 M.C.C. 514, 528 (1969). The theory is that a motor carrier's original showing of public convenience and necessity can reasonably be expected to apply to a new route if the differences between the new route and the authorized route are sufficiently slight. The Commission's interpretation of the 25-mile rule ensures that the superhighway route will not be drastically shorter than the authorized route, and it thereby prevents a carrier from taking advantage of the superhighway rules as a way to enter new markets without having to apply to the ICC for a certificate of public convenience and necessity.

Although the effect of the Commission's holding seems likely to be a reduction in competition over the Portland-Seattle route, the Commission's interpretation of its own regulation cannot be judicially overturned unless it is unreasonable or inconsistent with prior holdings. See, e. g., *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). See generally *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). However much we may question the principles underlying government regulation of the trucking industry, see, e. g., W. Jones, Regulated Industries 487–97 (1967), the choice is for Congress, and not the courts, to make.

The petition for review is denied.