CAROLINA SCENIC STAGES and Coastal Stages Corporation, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

and

The Greyhound Corporation and National Bus Traffic Association, Inc., Intervening Defendants.

Civ. A. No. 2950.

United States District Court
W. D. South Carolina,
Spartanburg Division.

Feb. 12, 1962.

J. Monroe Fulmer, Columbia, S. C., J. Nat Hamrick, Rutherfordton, N. C., and Wilmer A. Hill, Washington, D. C. (Fulmer, Barnes & Verner, Columbia, S. C., Ames, Hill & Ames, Washington, D. C., on brief), for plaintiffs.

Lee Loevinger, Asst. Atty. Gen., Donald L. Hardison, Atty., Dept. of Justice, and John C. Williams, U. S. Atty., Western Dist. of South Carolina, for the United States.

Robert W. Ginnane, Gen. Counsel, and Arthur J. Cerra, Asst. Gen. Counsel, I. C.C., for Interstate Commerce Commission.

H. Fletcher Padget, Jr., Columbia, S. C., L. C. Major, Jr., and Frederick A. Babson, Jr., Washington, D. C. (Turner, Padget, Graham & McDonald, Columbia, S. C., Turney, Major, Markham & Sherfy, Washington, D. C., on brief), for Greyhound Corp.

Wesley M. Walker, Greenville, S. C., Drew L. Carraway and John S. Fessenden, Washington, D. C. (Leatherwood, Walker, Todd & Mann, Greenville, S. C., Rice, Carpenter & Carraway, Washing-

ton, D. C., on brief), for National Bus Traffic Ass'n, Inc.

Before HAYNSWORTH, Circuit Judge, and WARLICK and MARTIN, District Judges.

HAYNSWORTH, Circuit Judge.

The plaintiffs, common carriers of passengers in interstate commerce, by this action, seek orders setting aside and enjoining the enforcement of orders of the Interstate Commerce Commission, pursuant to which The Greyhound Corporation, an intervening defendant, operates its buses in, or through, the Charleston (South Carolina) Air Force Base for the purpose of picking up and discharging interstate passengers. The plaintiffs' attack is directed principally to an order of the Commission confirming an administrative ruling permitting certificated carriers to serve, as an intermediate point, a military base if the base may be entered through a gate within one airline mile of the carrier's prescribed route and provided that the buses, within the confines of the military base, will not be operated over a public road. Secondarily, the attack is upon an order of the Commission granting to The Greyhound Corporation a certificate of convenience and necessity to serve the Charleston Air Force Base over a prescribed route differing from the one over which it would have been authorized to serve the base under the Commission's ruling construing all outstanding certificates.

Since it appears that Greyhound's only service of which the plaintiffs complain is being operated pursuant to its certificate of public convenience and necessity, we have concluded that it is unnecessary to consider the validity of the administrative ruling, though service initiated under it will bear upon our consideration of the validity of the order granting the certificate of convenience and necessity. The latter order, we conclude, had a sufficient evidentiary basis and its issuance was within the discretionary power of the Commission. As a result of our conclusion, that the only

competing service of which the plaintiffs complain is authorized by a lawful order of the Commission, this action must be dismissed.

The Greyhound Corporation, an intervening defendant, for many years has held a certificate of public convenience and necessity for the operation of its buses in interstate commerce between Charleston and Florence, South Carolina, over U. S. Highway No. 52, with the right to serve all intermediate points. Its buses, operating over U. S. Highway No. 52, passed within 3,628 feet of the main gate of the Charleston Air Force Base, first activated in 1942. It picked up and discharged interstate passengers traveling to and from the Air Base at a point on U. S. Highway No. 52. For a period beginning sometime after the reactivation of the air base in 1953, military vehicles operated a shuttle service for use by interstate passengers to and from the Air Base and the Greyhound stop on U. S. Highway No. 52.

In March 1956 the Charleston Air Force Base was designated as an aerial port of embarkation through which the Military Air Transport Service would operate foreign air service. This resulted in an increase in the permanent complement of the base to 6,000 persons and the provision of facilities to handle up to 10,000 transients each month.

With this prospect of greatly increased interstate travel to and from the Charleston Air Force Base, Air Force officials requested Greyhound to establish and operate an office on the base where transients could obtain information about its schedules and purchase tickets for interstate travel. Such an office was established by Greyhound on the base. In September 1956, it sold there 122 tickets for interstate transportation. In January 1957, the monthly sales of such tickets on the base increased to 167, and in April 1957 to 318.

In September 1956, Greyhound was advised by the Director of the Commission's Bureau of Motor Carriers, that, in the opinion of that official, an interstate carrier of passengers could operate

its buses into and upon a military base, provided the base could be entered through a gate within one airline mile of the designated route of the carrier. The plaintiffs, when informed of the informal opinion of the Director of the Bureau of Motor Carriers, requested its withdrawal. The Director referred the matter to Division 1 of the Interstate Commerce Commission, which thereafter issued Administrative Ruling No. 102, dated October 29, 1956, which, generally, conformed to the informal opinion of the Director of Motor Carriers. The plaintiffs then initiated a proceeding before the Interstate Commerce Commission for a review of Administrative Ruling No. 102. That proceeding culminated in a report dated March 28, 1960, entitled "No. MC-C-2077, In the Matter of Administrative Ruling No. 102," in which, after considerable discussion, Division 1 of the Interstate Commerce Commission concluded that existing certificates authorized common carriers of passengers to serve, as an intermediate point, incorporated municipalities located wholly within one mile of an authorized route, certain other establishments located within the one mile area and military establishments which could be entered within one aerial mile of the authorized route, provided the buses operating within the military establishment did not traverse a public highway. Excepted from the ruling were the metropolitan areas of New York City and Washington, D. C.

Greyhound did not receive the permission of Air Force officials to operate its buses on the Air Base until August 22, 1957, but, thereupon, it began to operate buses into the base under the authority of Administrative Ruling No. 102. During this period, Greyhound's interstate buses turned off highway No. 52 to enter the base by the most direct route, and they returned to highway No. 52 by the same route.

In the meanwhile, however, on October 9, 1956, Greyhound had filed with the Commission an application for a certificate of convenience and necessity to serve the Air Base. This application was initially entitled, "Atlantic Greyhound Corporation Extension—Charleston Air Force Base, Charleston, S. C.," and was numbered No. MC–1504 (Sub-No. 132). It was re-entitled, "The Greyhound Corporation Extension—Charleston Air Force Base, S. C.," and renumbered No. MC–1501 (Sub-No. 181). This proceeding resulted in an order dated May 6, 1960 granting a certificate of public convenience and necessity authorizing Greyhound to serve the Air Base, utilizing, however, a route different from that it theretofore had used in operating its schedules into the base under the authorization of Administrative Ruling No. 102. Under this certificate, Greyhound's northbound buses run from Charleston on U. S. Highway No. 52 to South Carolina Highway No. 642, thence over South Carolina Highway No. 642 to Airport Road, thence over Airport Road to Gate No. 1 of the Air Base, thence through the Air Base to Gate No. 2, and from there they return to U. S. Highway No. 52. Southbound trips travel the same route in the opposite direction.

The only schedules now operated by Greyhound into the Air Base are authorized by its certificate of convenience and necessity. Its operations into the Air Base were once dependent upon Administrative Ruling No. 102, but no longer are they in the least dependent upon the validity of that ruling, or of the subsequent order of the Commission confirming it. Hence the Court suggested to counsel, if it concluded that the Commission's issuance of the certificate was unassailable in this Court, the validity of the order in the rule-making proceeding was not at issue and not properly determinable in this action. The Court thereupon instructed counsel to prepare additional briefs or memoranda on the point. Thereafter, the Court has received communications from counsel, in which counsel for the Department of Justice, the Interstate Commerce Commission, the intervening defendant, Greyhound, and another intervening defendant, National Bus Traffic Association,

Inc., all of whom support the Commission's rule, are in agreement that the Court should not consider the validity of the order issued in the rule-making proceeding if it concludes that the certificate which authorizes Greyhound's service is valid. The plaintiffs still urge that we consider the validity of the rule founded upon Administrative Ruling No. 102. In doing so, they urge that there are many other military installations in other parts of the country and institutions of various sorts which may require bus service and which may be served so long as the Commission's general interpretation of existing certificates remains in effect. They further contend that the order issued in the Matter of Administrative Ruling No. 102 will present administrative difficulties and problems of enforcement, which could be avoided if each certificated carrier is required to confine its operations strictly to the designated routes, and is not allowed to depart therefrom to serve military or other establishments, unless the establishment, itself, is adjacent to the authorized route (not just within one airline mile of the designated route).

Justiciable controversies arise out of invasions, or threats of invasions, of private rights. Whether, by a particular order an administrative tribunal may lighten or increase the burden of its administrative duties, does not ordinarily present a justiciable question which one subject to regulation by the tribunal may present in issue.[1]

■ Since Greyhound's challenged operations are not dependent upon the validity of the order issued in the Matter of Administrative Ruling No. 102, it does not appear that the plaintiffs suffer any injury or harm by virtue of anything presently being done under that order. Whether some other carrier or carriers may be operating into some military base or university in California, as the plaintiffs suggest, it does not appear that any

such operation would have any bearing upon the plaintiff's operations, or affect the traffic available to it. If it is required or authorized to participate in the establishment of through rates and routes to serve such establishments, its prospect, so far as now appears, is one of gain and not one of loss. Since, as will subsequently appear, we conclude that Greyhound's operations are lawfully conducted under a valid certificate, we conclude that we need not now consider the validity of the Commission's order in No. MC–C–2077, In the Matter of Administrative Ruling No. 102.

We turn then to a consideration of the validity of the certificate under which Greyhound is now serving the Charleston Air Force Base.

As we have noted, on October 9, 1956 Greyhound applied for a certificate of convenience and necessity to operate its interstate buses into and through the Air Base. At about the same time, Coastal Stages, one of the plaintiffs, entered into negotiations with Air Force officials seeking their permission to serve the Air Base. It applied to the Commission for temporary authority to serve the Base, and on April 8, 1957 filed an application, comparable to the one filed by Greyhound the preceding October, for permanent authority to serve the Charleston Air Force Base. In February 1957, it obtained temporary authority to serve the Base and it actually commenced such service in March.

Coastal's application of April 8, 1957 was the first of the two to be heard. Greyhound appeared at that proceeding as a protestant. After a hearing, Coastal's application was granted.[2]

In granting the application of Coastal Stages, the Commission stated one of Coastal's contentions to be that service by both carriers was needed to satisfy the expanding transportation requirements at the Base. The Commission found that transient traffic through the

1. See, for instance, Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108.

2. No. MC–110595 (Sub-No. 4), Coastal Stages Corporation Common Carrier Application.

Air Base was increasing, and that it had then become so substantial as to warrant the service of Coastal even though the Commission should conclude that Greyhound should also serve the Base, either under the authority of Administrative Ruling No. 102 or by a grant of its application for a certificate of convenience and necessity.

The Commission's decision on Greyhound's application for a certificate of convenience and necessity was not issued until May 6, 1960. The application was then granted over the protest of the plaintiffs.[3] In deciding that a certificate should be issued to Greyhound authorizing its service to the Air Base, the Commission relied upon the fact that Greyhound had been providing service to the Air Base through its stop on Highway No. 52, later supplemented by its ticket office on the Base established in August 1956, and, still later, by actual direct service to the Base under the authority of Administrative Ruling No. 102. The Commission concluded that the fact and nature of the service in the past and the volume of the traffic handled established the public need for continuation of the service.

The plaintiffs' objection to the sufficiency of the evidence to support the Commission's action in the Greyhound case is founded upon the absence of any testimony by any Air Force official, or by any member of the public, forming a basis for a finding that future need necessitated Greyhound's service. Such testimony showing the need of bus service to the Base had been introduced by Coastal in the Coastal case, with the re-

sult that the Commission expressed the opinion there that the traffic required service by both carriers. While similar testimony was not introduced by Greyhound in support of its application, the testimony in support of the parallel application of the protestant and the Commission's action thereon furnished a background for the Commission's action in the Greyhound case.

■ The Commission, in many such proceedings, has accepted as sufficient proof of the need for service the fact that the service has been offered in the past with substantial use. Where there is an existing service regularly used by a substantial number of interstate passengers, it would be but useless redundancy to require testimony that there was a substantial number of interstate passengers traveling through the Base desiring the service of the applicant. The fact that the service had been utilized and was being utilized at the time of the hearing proves the demand for it to the extent of the utilization. General testimony by witnesses to prove what the traffic figures established definitively could add but little to the weight of the evidence and was unessential to the sufficiency of the foundation for the Commission's finding of public need. This has been the consistent position of the Commission. It has consistently held that public need may be shown by prior service, lawfully conducted, without additional testimonial evidence.[4] The rule is a reasonable one, and we cannot conclude that the Commission could not treat the fact, the nature and the use of Greyhound's prior service as sufficient proof of public need for its continuance.

3. No. MC–1501 (Sub-No. 181), The Greyhound Corporation Extension—Charleston Air Force Base, S. C. (Initially numbered No. MC–1504 (Sub-No. 132)).

4. Marion Trucking Company, Inc.—Purchase—Kiles Motor Express, Inc. (1959), 75 M.C.C. 769, 777; Expressways, Inc.—Purchase—Warner (1958), 75 M.C.C. 647, 653; Jack Cole Company Extension —Anniston Ordnance Depot, (1957), 72 M.C.C. 691; Levine, Extension of Operations—Household Goods, (1947), 47 M.C.

C. 323, 329; Richard M. Boland, Inc., Extension of Operations—Newburgh, New York (1947), 46 M.C.C. 739, 742; C. & D. Motor Delivery Company—Purchase —Hubert C. Elliott, (1942), 38 M.C.C. 547; D. A. Beard Truck Lines Co. Application, (1942), 34 M.C.C. 395, 416; Overland Freight Lines, Inc. Contract Carrier Application, (1941), 29 M.C.C. 121, 125; Clarence Gustafson Common Carrier Application, (1938), 7 M.C.C. 732, 733.

There is no question but that Greyhound's service to the Air Base, so long as it picked up and discharged passengers at its stop on route No. 52, was a lawful service to Air Base passengers. There is no question of the lawfulness of that service after Greyhound placed a ticket agent on the Base, and the convenience of passengers was facilitated by the military vehicle shuttle service to and from the Base and Greyhound's stop on highway No. 52. Greyhound's service to transients on the Base was made more efficient and more adequate when it began to operate its buses into the Base under the authority of Administrative Ruling No. 102, and the service did not then become unlawful.

■ The plaintiffs here contend, of course, that Administrative Ruling No. 102 and the rule-making order of the Commission based upon it are unlawful. Its position is that the rule is an unreasonable interpretation of existing certificates. Whatever else may be said of it, it is not so obviously beyond the power and the jurisdiction of the Commission as to be said to have been void for all purposes. So long as the rule remains in effect and unrevised, it validated and made lawful the service rendered pursuant to its terms. If it should ultimately be held that the Commission exceeded its authority in the rule-making proceeding, the decision could operate prospectively only, making unlawful further service dependent upon the Commission's ruling, but without making unlawful *ab initio* service earlier rendered in good faith reliance upon the validity of the Commission's order or the earlier Administrative Ruling.

■ We find no basis for a characterization of any of Greyhound's earlier service to the Air Force Base as being unlawful. The service, lawfully rendered, was itself evidence of the traffic demand and of the public need for the continuation of that service. Since the Commission's finding of public need is adequately supported, its grant of the certificate authorizing the service was a proper exercise of the discretion which the Transportation Act gives the Commission.

Finally, the plaintiffs contend that the grant of the certificate to Greyhound was dependent upon the Commission's assumption of the validity of its order in the rule-making proceeding. This appears, they say, from the order of the Commission in the Greyhound case and from the fact that the order was not issued until after the Commission's order in the rule-making proceeding. They reason that, so long as the Commission assumed that Greyhound was authorized to serve the Air Base under the order in the rule-making proceeding, Greyhound's application for a certificate of public convenience and necessity involved no extension of service to the Air Base but merely a change in the route by which such service was afforded.

It is true, of course, that the Commission, in considering the Greyhound application, referred to Greyhound's previous service into the Air Base as authorized by Administrative Ruling No. 102. It did not expressly, or by necessary implication, however, bottom its grant of its certificate upon a premise of validity of its general interpretation of existing certificates. By the title it gave the proceedings and by its discussion of Greyhound's prior service, it is clear that the Commission treated the application as one for a certificate authorizing an extension of service to the Air Base. The service Greyhound had rendered in operating its buses into the Air Base was considered lawful because of Administrative Ruling No. 102, properly so as we have held, but the references to the earlier service were solely for the purpose of an invocation of the principle that proof of public need may be shown by the nature and extent of service lawfully rendered in the past. It would have been unnecessary to rely upon that principle if the only question presented by the Greyhound application was a modification of the route employed in rendering the service rather than the appropriateness of the issuance of new authority

for an extension of service. Perhaps the Commission may have anticipated some challenge directed to its order in the rule-making proceeding, but since it treated Greyhound's application in the certification case as one for an extension of service into the Air Base, we cannot say it would have come to some other conclusion in the certification case had it convinced itself that its order in the rule-making proceeding was invalid.

■■■ The Transportation Act places upon the Commission the responsibility of determination of the propriety of the issuance of a certificate of convenience and necessity. It makes such a determination upon the basis of evidence offered in the particular proceeding considered in the light of the national transportation policies as defined by the Congress and against a background of the Commission's own experience and expertise. The role of a court reviewing an order of the Commission is necessarily a very limited one.[5] When the Commission has disregarded no statutory command, has made findings based upon substantial evidence, and its action is warranted by its findings, the reviewing court may not substitute its own judgment or speculate what the Commission may have done if the Commission's practical experience and its administrative practices and rulings had taken a different course in the past. Here, there is no warrant for a conclusion by this reviewing court that the Commission's assumption of the validity of its own order in the rule-making proceeding so far infected the proceedings in the certification case that the Commission did not give real consideration to the evidence it carefully discussed and upon which it founded its findings and conclusions. The Commission has given expression to the considerations it thought relevant and to the reasons for its conclusion. We should not range far afield to speculate that its

decision rested wholly upon some other unexpressed premise.

The certificate to Greyhound was issued on the basis of a finding, supported by evidence, of public need for the service. We accept the Commission's finding on that basis, as we must.

Since we conclude that the only competing service, of which the plaintiffs complain, is validly authorized by the Commission's certificate of public convenience and necessity, the plaintiffs' complaint will be dismissed.

5. Southern Ry. Co. v. United States, E.D. Va., 154 F.Supp. 562, aff'd mem., 355 U.S. 370, 78 S.Ct. 364, 2 L.Ed.2d 352; Norfolk Southern Bus Corp. v. United States, E.D.Va., 96 F.Supp. 756, aff'd mem., 340 U.S. 802, 71 S.Ct. 68, 95 L.Ed. 590; United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 82; Virginian Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463.