**HOUFF TRANSFER, INCORPORATED,**
**Plaintiff,**

v.

**UNITED STATES** of America and Interstate Commerce Commission,
**Defendants,**

and

Akers Motor Lines, Inc., Carolina Freight Carriers Corporation, Central Motor Lines, Inc., Johnson Motor Lines, Inc., Mercury Motor Express, Inc., Pilot Freight Carriers, Inc., and R. C. Motor Lines, Inc., Bell Lines, Inc., and McLean Trucking Company, Overnite Transportation Company, and Jones Motor Co., Inc., Intervening Defendants.

Civ. A. No. 67–C–27–H.

United States District Court
W. D. Virginia,
Harrisonburg Division.

Nov. 1, 1968.

Curry Carter, Staunton, Va., Wrape & Hernly, Washington, D. C., for plaintiff.

Thomas B. Mason, U. S. Atty., Roanoke, Va., Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, Steven Kazan, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

E. Griffith Dodson, Jr., Dodson, Pence, Coulter, Viar & Young, Roanoke, Va., James E. Wilson, Jon F. Hollengreen, McInnis, Wilson, Munson & Woods, Washington, D. C., for Akers Motor Lines, Inc., Carolina Freight Carriers Corp., Central Motor Lines, Inc., Johnson Motor Lines, Inc., Mercury Motor Exp. Inc., Pilot Freight Carriers, Inc., and R. C. Motor Lines, Inc.

E. Griffith Dodson, Jr., Dodson, Pence, Coulter, Viar & Young, Roanoke, Va., James W. Lawson, MacDonald & McInerny, Washington, D. C., for Bell Lines, Inc., and McLean Trucking Co.

E. Griffith Dodson, Jr., Dodson, Pence, Coulter, Viar & Young, Roanoke, Va., W. T. Croft, J. G. Dail, Jr., Washington, D. C., for Overnite Transp. Co. and Jones Motor Co., Inc.

Before BUTZNER, Circuit Judge, DALTON, Chief Judge, and MERHIGE, District Judge.

BUTZNER, Circuit Judge:

Houff Transfer, Inc., sues to set aside a portion of a report and order of the Interstate Commerce Commission which denied it authority to purchase the operating rights of Boward Truck Line, Inc., in North Carolina and South Carolina.[1] We hold that the Commission's order was warranted in law and fact, and accordingly we dismiss Houff's complaint.

Both Boward and Houff are authorized to operate as motor carriers of general commodities with exceptions not pertinent to this action. Houff operates

1. Houff Transfer, Inc.—purhase (portion)—Boward Truck Line, Inc., 101 M.C.C. 727 (1967).

over irregular routes through points in Virginia, West Virginia, Maryland, Pennsylvania, North Carolina, South Carolina, and the District of Columbia. Boward holds authority to operate to destinations in Maryland, Pennsylvania, Washington, D. C., North Carolina, South Carolina, and West Virginia from two separate points of origin in Virginia. The first point embraces Staunton and places in Augusta County within 50 miles of Staunton. The second point includes places in Rockbridge and Rockingham Counties, Virginia. Houff entered into an interchange agreement with Boward, effective March 30, 1964, to bridge approximately 10 miles separating the two points of origin. In late March or early April 1964, Boward offered its business for sale by an advertisement in a trade publication. On June 29, after extensive negotiations, Houff contracted to purchase Boward's operating authority and equipment. Later the agreement was revised to permit Boward to sell to Wilson Trucking Corporation regular route authority between Lynchburg and Covington, Virginia, that was of no interest to Houff.

Upon joint application of Houff and Boward, Houff was authorized to lease temporarily Boward's rights pending the Commission's approval of the purchase agreement. With exceptions that are not material to this proceeding, the Commission approved the transfer of Boward's rights to Houff conditioned, however, upon cancellation of Boward's authority to operate to and from North Carolina and South Carolina. Houff attacks that part of the Commission's order which requires the cancellation of the operating rights in these states and consequently excludes them from Houff's purchase.'

Section 5(2) of the Interstate Commerce Act [49 U.S.C. § 5(2)] authorizes a motor carrier to purchase the property and franchise of another carrier if the Commission finds the proposed transaction will be consistent with the public interest. In giving its approval, the Commission may impose just and reasonable terms and conditions. The adequacy, economy, and efficiency of transportation service in the franchised territory are among the factors which the Commission must consider in determining whether the acquisition of motor carrier rights is consistent with the public interest. New York Central Securities Corp. v. United States, 287 U.S. 12, 25, 53 S.Ct. 45, 77 L.Ed. 138 (1932). The Commission has consistently disapproved purchases of operating rights that will result in new, unneeded, competitive service. Key v. United States, 263 F.Supp. 544, 551 (S.D.Ind. 1966).

In this instance the competitive effect upon other carriers of Houff's acquisition of Boward's North Carolina and South Carolina authority depends upon whether Boward's operating rights in these two states lay dormant. The evidence established that other carriers provided services adequate to meet the needs of the public. For this reason, if Boward's rights in North Carolina and South Carolina were dormant, their rejuvenation by Houff would create a new, competitive service not required by the public convenience and necessity. Conversely, if Boward's rights were not dormant, they could be transferred without proving continuing public necessity. Boward's prior service would show the public need. Carolina Scenic Stages v. United States, 202 F.Supp. 919, 923 (W.D.S.C.1962).

Crucial to the issue of dormancy were the Commission's findings that between January and June 1964 Boward moved two shipments to South Carolina and that it handled 104 shipments to or from North Carolina. Of the North Carolina shipments, 37 moved to 13 locations in the state and 67 shipments moved from four locations; 76% moved to or from only three points in the state. Chronological examination of the traffic emphasizes its infrequency. Four shipments moved in January, one in February, five in March, and six in April. This is an average of only one shipment per week for the four-month period. After Bow-

ard and Houff established their interchange and Houff had evidenced interest in purchasing Boward's rights, the number of shipments rapidly increased.[2] In May, 29 shipments moved and in June, 58. It is significant that the 104 North Carolina shipments comprised only 2.5% of all Boward's shipments during the six-month period.

The Commission concluded that this traffic failed to show a substantial and continuous service in North Carolina and South Carolina and that the service proposed by Houff would constitute a new service inconsistent with the public interest. Houff attacks these conclusions by asserting that the Commission misapplied the law in several ways. First, Houff urges that "as a matter of law dormancy exists only where the facts demonstrate a complete abandonment and discontinuance of service." The concept of dormancy, however, is not so rigidly circumscribed. A lack of substantial service to a representative number of points in the franchised area may establish that operating rights are dormant. Of necessity the test is elastic. Many factors must be considered. They include the nature and scope of the operating rights, the population and concentration of industry in the area served, the availability of other carriers affording transportation, and the extent to which the capacity and resources of the vendor have been utilized. A simple tally of the number of shipments in a given period cannot determine dormancy. See Miami Transp. Co., Inc.—purchase—Strothman, 97 M.C.C. 600, 608 (1964); New Dixie Lines, Inc. —control—Jocie Motor Lines, Inc., 75 M.C.C. 659, 666 (1958). Another factor is the discrepancy between the volume of traffic before and after Houff evidenced an interest in the purchase of Boward's rights. Business developed after negotiations for sale of rights is entitled to little weight in determining the scope of operations previously conducted. See Prichard Transfer, Inc.—purchase— Weiss, 93 M.C.C. 535, 542 (1964). Upon the record in this case, the Commission could properly find that Boward's South Carolina and North Carolina operations were insubstantial and its authority dormant in relation to the commodities and territory authorized, to its own overall operations, to traffic available for transportation, and to the traffic handled by Houff under its temporary authority. The Commission's ultimate finding that the public interest would not be promoted by authorizing Houff, through acquisition of Boward's rights, to institute new, unnecessary service is supported by substantial evidence. The underlying facts supporting the Commission's ultimate finding may be viewed in terms of the lack of substantiality of Boward's services or in terms of the dormancy of Boward's operating rights. Under either approach it was unnecessary to establish that Boward had completely abandoned and discontinued service throughout South Carolina and North Carolina.

Secondly, Houff's complaint that the Commission should have made a finding on Boward's holding out or solicitation of business does not require us to set aside the Commission's order or remand the case for further proceedings. A claim of holding out or solicitation of business provides but a slender reed when, as here, the transportation rights involve general commodities over statewide areas. It is no substitute for performance of the operations required by the vendor's certificate. Cf. United States v. Carolina Freight Carriers, Inc., 315 U.S. 475, 480, 62 S.Ct. 722, 86 L.Ed. 971 (1942); Aero Mayflower Transit Co., Inc.—purchase—Walls, 93 M.C.C. 369, 376 (1963). Moreover, Houff does not call to the attention of the court testimony or exhibits pertaining to solicitation of business which it claims the

---

2. The examiner, believing the interchange unlawful, declined to consider shipments moving to and from North Carolina via the interchange during the first six months of 1964. The Commission held that the interchange was legal and included the shipments in its evaluation of the evidence.

Commission should have considered, and our examination of the record does not disclose material evidence upon which the Commission should have made additional findings concerning Boward's sales activity.

Houff bases its third attack upon a portion of the Commission's decision which states:[3]

"In our opinion, the evidence of shipments transported by Boward, indicating as it does that only three points in North Carolina were served with any degree of regularity, and that a substantial portion of the total traffic moved under a newly created interchange arrangement, is not sufficiently representative to show that a substantial and continuous service was performed to or from points in North Carolina."

Houff seizes upon the statement "that only three points in North Carolina were served with any degree of regularity" as indicating a departure from previous Commission decisions. Houff argues that since it had territorial authority throughout the State of North Carolina, its service should have been measured by its shipments to and from the entire state and not simply from three points. It asks us to remand the case to require the Commission to give full weight to its total activity in North Carolina. We find no error of law in the Commission's evaluation of Boward's North Carolina business. All of the 104 shipments in the six-month test period were fully considered. The Commission expressly applied the principle found in New Dixie Lines, Inc.—control—Jocie Motor Lines, Inc., 75 M.C.C. 659, 666 (1958):

"An irregular route carrier is only required to submit evidence showing that it has rendered substantial service to a representative number of points within its authorized territory in order to support the conclusion that its operations have been substantial and continuous."

In commenting that only three points in the state were served with any regularity, the Commission was simply demonstrating that Boward did not render substantial service to a representative number of points. We believe the rule which it applied was consistent with settled law on the subject. Cf. Miami Transp. Co., Inc.—purchase—Strothman, 97 M.C.C. 600, 608 (1964).

Houff's other assignments of error require little discussion. Contrary to Houff's assertion, the Commission considered testimony of supporting shipper witnesses. The examiner reported this testimony at great length and carefully evaluated its significance. The Commission adopted his findings and conclusions. It was not required to restate these portions of the examiner's report. Key v. United States, 263 F. Supp. 544, 549 (S.D.Ind.1966). In its order denying Houff's petition for reconsideration the Commission said it considered the shippers' testimony in concluding that Boward and Houff had failed to show any inadequacy in present carrier services or any need for reactivation of Boward's dormant rights. Further elaboration by the Commission was not required. See Carolina Scenic Coach Lines, v. United States, 59 F. Supp. 336 (W.D.N.C.), aff'd mem., 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398 (1945).

Finally, the Commission did not abuse its discretion in declining to grant Houff a further hearing so that it could introduce additional evidence of operations under its temporary lease. This evidence would not show Boward's operations were substantial and continuous. On the contrary, an increase in volume by Houff under its temporary lease simply emphasizes the paucity of Boward's activity. The business generated under the temporary lease does not conclusively prove public necessity. Colorado-Arizona-California Express, Inc.

3. Houff Transfer, Inc—purchase (portion)—Boward Truck Lines, Inc., 101 M.C.C. 727, 736 (1967).

v. United States, 224 F.Supp. 894, 900 (D.Colo.1963). We find no abuse of the Commission's discretion in denying a further hearing. See I. C. C. v. Jersey City, 322 U.S. 503, 514, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944).

Substantial evidence in the record, considered as a whole, supports the Commission's finding that it is consistent with the public interest to require cancellation of Boward's South Carolina and North Carolina operating rights as a condition to approving transfer of its rights in other areas. Houff has not demonstrated that the Commission's action is founded upon an error of law. Determination of these issues discharges our jurisdiction to review. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946). The complaint is dismissed. Houff's motion to stay these proceedings pending consideration of its control application before the Interstate Commerce Commission is denied.