**VIRGINIA–CAROLINA FREIGHT LINES, INC., and Merit Transport Corporation**

v.

**UNITED STATES of America and Interstate Commerce Commission, Pilot Freight Carriers, Inc., Carolina Freight Carriers Corporation.**

Civ. A. No. 74–29.

United States District Court, W. D. Virginia, Roanoke Division.

March 19, 1976.

Francis W. McInerny, MacDonald & McInerny, Washington, D. C., G. Marshall Mundy, Roanoke, Va., for plaintiffs.

Lloyd John Osborn, Interstate Commerce Com'n, Washington, D. C., for I.C.C.

John H. D. Wigger, Dept. of Justice, Washington, D. C., Leigh B. Hanes, Jr., U. S. Atty., Roanoke, Va., for the United States.

William F. King, Alexandria, Va., for Pilot Freight Carriers, Inc.

R. Roy Rush, Roanoke, Va., James E. Wilson, Washington, D. C., Jon F. Hollengreen, Washington, D. C., for Carolina Freight Carriers.

OPINION and ORDER

Before WIDENER, Circuit Judge, TURK, Chief District Judge, and DALTON, District Judge.

TURK, Chief District Judge.

This case is before this three-judge district court pursuant to 28 U.S.C. §§ 2321– and 2325 and 49 U.S.C. § 17(9) and § 305(g) and (h) to enjoin orders of the Interstate Commerce Commission (ICC) which denied the joint application of Virginia-Carolina Freight Lines, Inc. (Virginia-Carolina) and Merit Transport Corporation (Merit) for Virginia-Carolina to purchase the operating authority of Merit. Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a), plaintiffs also seek to have the court order the ICC to provide certain decisional memoranda related to the dissenting vote of one of the Commissioners in the denial of their application.

On July 17, 1970 the Superior Court of New Jersey, Chancery Division, Hudson County, adjudged Merit insolvent and appointed a receiver who was directed to liquidate the assets of the company. The Certificate of Public Convenience and Necessity was thereafter sold at auction to Virginia-Carolina for $90,000, subject to ICC approval of the transaction. On November 18, 1970 Virginia-Carolina and Merit filed a joint application seeking authority under 49 U.S.C. § 5(2)(a) for Virginia-Carolina to purchase Merit's operating authority. Simultaneously, Virginia-Carolina and Merit filed an application under 49 U.S.C. § 310a(b), for temporary authority to lease the operating authority of Merit to Virginia-Carolina for $100 per month pending a final determination on the purchase application. Temporary authority was granted by the ICC on December 31, 1970 and on January 4, 1971 Virginia-Carolina commenced operations under temporary authority.

The purchase application was heard by an administrative law judge on May 25–26, 1971. Pilot Freight Carriers, Inc., Carolina Freight Carriers Corp. and Russell Transfer, Inc. opposed the application and nine shippers or receivers of freight supported it.[1] By report and order served August 24,

1. Pilot Freight Carriers, Inc. and Carolina Freight Carriers, Inc. were granted leave to intervene as party defendants to this suit and have responded in opposition to plaintiffs' claims.

1971, the administrative law judge found that the operating rights of Merit were "dormant," except those exercised in a truck-rail trailer-on-flatcar service; that Virginia-Carolina did not propose to operate the Merit rights in a similar trailer-on-flatcar service, thereby establishing a different pattern of service; and that Virginia-Carolina had failed to demonstrate a public need for the resulting new service.

Virginia-Carolina and Merit filed exceptions to the findings of the administrative law judge with the ICC. On August 28, 1972, Division 3 of the ICC issued a report which concluded that Merit's operating rights were dormant from July, 1970 to January 4, 1971 when Virginia-Carolina began operations under temporary authority; and that Virginia-Carolina's operations under the temporary authority were so dissimilar to the previous service provided by Merit as to amount to a new competitive service for which Virginia-Carolina had failed to establish a public need.

On November 14, 1972, Virginia-Carolina and Merit filed another petition with the ICC for reconsideration of its decision or a further hearing. Accompanying this petition plaintiffs submitted seventeen affidavits from customers and a traffic study purporting to show the continuing public need for the service provided by Virginia-Carolina. On January 11, 1974, Division 3, acting as an Appellate Division, entered an order denying this petition on the grounds that plaintiffs had not set forth new material facts or arguments; that the conclusions of the report and order of August 28, 1972 were adequately supported by the evidence; that errors of fact or law had not been demonstrated; and that no showing had been made warranting reconsideration or further hearing. Although not apparent on the face of the order, plaintiffs subsequently learned that one of the Commissioners comprising Division 3 had dissented.

The present suit was filed on February 12, 1974 and on the same date plaintiffs filed a petition with the ICC asking that the challenged proceeding be deemed to involve an issue of "General Transportation Impor-

tance" requiring additional consideration. The ICC denied this petition upon finding that no issue of general transportation importance was involved. The ICC did, however, authorize Virginia-Carolina to continue under temporary authority until a final court decision was reached.

On July 18, 1974, this court granted plaintiffs' motion to stay further judicial proceedings in order that they could file yet another petition with the ICC for further hearing or reconsideration because of changed circumstances. Such petition was filed on July 29, 1974 asking for a further hearing to develop the record on the issue of public need. In support of their contention that a substantial public demand existed for the continuation of Virginia-Carolina's service, plaintiffs submitted statements from forty-two witnesses, most of whom had used Virginia-Carolina's services under temporary authority. By order dated September 10, 1974 Division 3, acting as Appellate Division, denied plaintiffs' petition for a further hearing.

■ As noted above, the bases for denying Virginia-Carolina's application to purchase Merit's operating rights were (1) that Merit's authority was dormant; and (2) that Virginia-Carolina's temporary use of Merit's authority was so dissimilar from Merit's previous operations as to amount to a new competitive service which plaintiffs failed to demonstrate met an otherwise unmet public need. The issues of the dormancy of Merit's authority and the character of the temporary service provided by Virginia-Carolina are matters largely within the discretion and expertise of the ICC if supported by substantial evidence and not arbitrary, capricious, and resulting from an abuse of discretion. *See Arkansas-Best Freight System, Inc. v. United States*, 364 F.Supp. 1239 (W.D.Ark.1973); *Houff Transfer, Inc. v. United States*, 291 F.Supp. 831 (W.D.Va.1968). Given this limited standard of review and the present record, it is difficult for this court to accept plaintiffs' challenges to the substantive findings of the ICC. However, the court does not reach the merits of the ICC's determinations of

"dormancy" and "new competitive service" at this time because the court is of the opinion that plaintiffs' petitions for a further hearing were justified by the circumstances of this case.

At the initial hearing before the administrative law judge, plaintiff called nine shippers in support of their joint application. The administrative law judge found their testimony to be unpersuasive as a basis for reviving Merit's dormant rights or justifying the inauguration of a new competitive service. Similarly, Division 3 of the ICC found the shipper's testimony inadequate to justify the establishment of a new competitive service. In both of these proceedings the primary issues were the dormancy of Merit's operating authority and whether the service provided by Virginia-Carolina was of a different character than that previously offered by Merit. It was only after deciding these issues against plaintiffs that the public need for this service was considered, and it is clear that the testimony of the nine shippers was not sufficient to establish such a need.

However, when plaintiffs petitioned for a further hearing in November, 1972 they offered 17 affidavits from users of Virginia-Carolina's services on the issue of public need. Although these affidavits did not overwhelmingly demonstrate a public need for Virginia-Carolina's services under Merit's operating rights, they were clearly more substantial than the initial testimony of the nine supporting witnesses as summarized by the administrative law judge. Generally, these affidavits demonstrated a high degree of satisfaction with Virginia-Carolina's services, and several shippers expressed dissatisfaction with the alternative available carrier service. The evidence offered in these affidavits was not simply cumulative to that offered at the initial hearing, and although it would have been desirable for plaintiffs to have offered this evidence at the initial hearing, such evidence was to some extent unavailable because less than four months had passed since temporary authority had been granted to Virginia-Carolina. Additionally, the emphasis at this hearing was on the nature and extent of Merit's past service and only secondarily concerned the need for a new service.

■ In rejecting plaintiffs' exceptions to the findings of the administrative law judge, Division 3 of the ICC stated in its August, 1972 report:

"We recognize that protestants did not present very persuasive evidence of actual diversion. However, in the absence of evidence of the inadequacy of existing service, or of a showing of need for the service proposed, protestants are entitled to protection from the establishment of additional competition. Where the institution of a new service is proposed, applicants must show a need therefor, and may not escape this requirement because protestants have not submitted positive proof of diversion of specific traffic as a result of the proposed transaction. See North American Van Lines, Inc.—Purchase—Hagerstown Motor, 93 M.C.C. 125."

Clearly, this statement was readily supportable on the basis of the evidence then available in support of plaintiffs' petition. However, the affidavits subsequently offered raised substantial questions regarding the satisfaction by consumers with existing carrier service and hence the public need for the particular service being provided by Virginia-Carolina. In the court's opinion, this evidence, when coupled with the absence of evidence of harm to the operations of the protesting carriers, justified granting a further hearing to plaintiffs in order that the record might be more fully developed regarding the public need for the services being provided by Virginia-Carolina.

■ It is also noteworthy that following the denial of plaintiffs' November, 1972 petition for a further hearing some 14 months after it had been submitted, plaintiffs filed another petition for a further hearing. The stated purpose of this petition was to bring to the ICC's attention a change in circumstances which had occurred since its last order and to have the ICC reevaluate its decision regarding Virginia-Carolina in

light of its recent decision in Overnight Transp. Co.—Pur.—Tidewater Express, 116 M.C.C. 539, decided January 14, 1974. At the time of this petition, plaintiffs had under consideration an application under § 207 of the Interstate Commerce Act, 49 U.S.C. § 307, for new authority to provide the service which Virginia-Carolina had provided for over four years under temporary authorization. In support of this petition for a further hearing plaintiffs submitted 42 Certificates of Support for the purpose of showing the demand for the service provided by Virginia-Carolina. It is obvious from a consideration of this petition and its supporting documents and the November, 1972 petition and affidavits that the available evidence of a public need for Virginia-Carolina's service and the harm to the protesting carriers was considerably more extensive and reliable than that presented to the administrative law judge over three years earlier. In fairness to plaintiffs as well as the consuming public a further hearing should have been granted. Given the fact that plaintiffs have offered to present evidence of a significant public need for the service they are providing under temporary authority, without significant harm to other carriers, and the fact that at the time of their initial hearing such evidence was not readily available, the court is of the opinion that the ICC's decision denying plaintiffs an opportunity for a further hearing was an abuse of discretion.

Plaintiffs also seek in this suit, pursuant to § 552(a) of the Freedom of Information Act, to compel the ICC to release to them any "decisional memoranda" of the Commissioners comprising Division 3 in connection with its order of January 30, 1974 and particularly any expression concerning the dissenting vote of Commissioner Deason. Plaintiffs initially made such a request to the Secretary of the ICC who denied it on the basis of 5 U.S.C. § 552(b)(5), which excepts from the disclosure requirements of the Act,

"inter-agency or intra-agency memorandums or letters which would not be avail-

able by law to a party other than an agency in litigation with the agency." Plaintiffs appealed this denial to the Chairman of the ICC who affirmed the Secretary's denial since no dissenting opinion had been published by Commissioner Deason and plaintiffs' request for "any decisional memoranda" was exempted under § 552(b)(5).

■ Plaintiffs urge in their brief that the information they desire from the ICC is not memoranda, letters, or other documents reflecting pre-decisional deliberations by the Commissioners or their staff, but only the memoranda opinion accompanying the final vote of the three commissioners. In support of their claim, plaintiffs cite 5 U.S.C. § 552(a)(2) which provides:

"Each agency, in accordance with published rules, shall make available for public inspection and copying—(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases; . . . ."

Since no dissenting opinion was issued and the order of the majority was made available to plaintiffs, the court perceives no basis for granting the relief requested.

Accordingly, for the reasons stated, it is ORDERED that this case be, and the same hereby is, remanded to the ICC for further proceedings in accordance with the views expressed herein; and that plaintiffs' claim for decisional memoranda of the ICC in connection with its January 30, 1974 order be, and the same hereby is, denied.

WIDENER, Circuit Judge (concurring and dissenting):

I concur with the conclusions reached by the majority regarding the relief requested under the Freedom of Information Act. However, I respectfully dissent from the court's determination that the ICC's decision denying plaintiffs an opportunity for a further hearing was an abuse of discretion.

When Congress, in 1935, amended the Interstate Commerce Act by adding the Motor Carrier Act, Congress intended that the Commission be able "authoritatively to

decide whether additional motor service would serve public convenience and necessity." *ICC v. Parker*, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051, 2059 (1944).

The only question before this court is whether the Commission clearly abused its discretion in determining whether the applied-for motor service would serve public convenience and necessity. A reviewing court "cannot substitute its own view concerning what should be done . . . for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821, 835 (1946).

The decision of whether to open a matter for rehearing is one within the discretion of the Commission. See, e. g., *ICC v. Jersey City*, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944). The Commission determined that the seventeen affidavits presented in the first petition for rehearing and the forty-two Certificates of Support presented in the second petition for rehearing set forth no new material facts and therefore presented nothing which would warrant reconsideration or further hearing.

A comparison of the nine public witness statements presented at the hearing and the seventeen affidavits tendered for consideration indicates that substantially similar consumer complaints with existing shipper services were presented in both sets of statements. The forty-two Certificates of Support indicate only that the users were satisfied with the service rendered by plaintiffs under temporary authority, and demonstrated no inadequacy of the existing service.

Plaintiffs were aware of the possibility that the Commission might decide that Merit's authority was dormant and that the temporary use of Merit's authority was so dissimilar as to amount to a new service. Therefore, plaintiffs should have been prepared to demonstrate at that time that public need warranted the new service. They did not and cannot seek now to do in another hearing what they should have done originally.

In my opinion, the Commission acted within its discretion in denying both petitions for rehearing.